**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**LOUISIANA–PACIFIC CORPORATION,**
**Defendant-Appellant.**

**No. 84–3552.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 1984.

Decided March 4, 1985.

As Amended May 7, 1985.

Benjamin P. Schoen, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Clifford N. Carlsen, Jr., James N. Westwood, Michael E. Arthur, Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for defendant-appellant.

Before SKOPIL, FARRIS and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

The United States brought this action on behalf of the Federal Trade Commission ("FTC"). The FTC sought a civil penalty assessment against Louisiana-Pacific Corporation ("L–P") for L–P's failure to comply with a consent order entered by the FTC. L–P filed a counterclaim alleging that the FTC had violated section 5(b) of the Federal Trade Commission Act, 15 U.S.C. § 45(b), by refusing to reopen the consent order after L–P had petitioned for reopening. The district court granted the FTC's motion for a summary judgment on the counterclaim and ultimately assessed a civil penalty of $4 million against L–P. We reverse in part and vacate in part.

## I

## FACTS AND PROCEEDINGS BELOW

L–P is a diversified forest products company with a significant share of the particleboard market. On March 22, 1978, L–P entered into a merger agreement with Fibreboard Corporation ("Fibreboard"), which is a smaller forest products company. L–P's goal in consummating the merger was to increase its supply of timber lands. Although Fibreboard did not produce particleboard, it owned a plant in Rocklin, California ("the Rocklin plant") that produced medium density fiberboard ("MDF").

On February 27, 1979, the FTC filed a complaint challenging the merger. The complaint defined the relevant product market as the manufacture and sale of "particleboard and MDF" and alleged that the proposed merger would substantially lessen competition in a geographical submarket consisting of eleven western states. On June 26, 1978, L–P and the FTC stipulated to a consent order that required L–P to sell the Rocklin plant within two years from the date on which the consent order became effective. The consent order became final on March 28, 1979. Accordingly, L–P was obligated to sell the Rocklin plant by March 28, 1981.

In 1979, the timber industry fell into a severe recession. By December 19, 1980, the prime interest rate had risen from nine percent to over twenty-one percent. As a result, the housing and construction markets became depressed, significantly reducing the demand for wood products. In response to these conditions, L–P converted one particleboard plant to the production of waferboard and waived its option to purchase a particleboard plant in Ukiah, California from Georgia-Pacific Corporation. Although it made some effort to sell the Rocklin plant, L–P failed to complete a sale within the specified period of time.

On February 5, 1980, L–P filed a petition requesting the FTC to reopen the consent order. The FTC denied the petition on June 26, 1980. On June 25, 1981, L–P filed a second petition to reopen. The FTC denied the petition on July 31, 1981. The FTC also denied L–P's request for an extension of time.

On September 4, 1981, the FTC filed a civil penalty action against L–P under section 5(*l*) of the Federal Trade Commission Act, 15 U.S.C. § 45(*l*), which provides for a maximum penalty of $10,000 for each day the defendant is in violation of an FTC order. On October 1, 1981, L–P filed a counterclaim, seeking a dismissal of the action and an order compelling the FTC to reopen the consent order. On May 3, 1982, the district court granted the FTC's motion for a summary judgment dismissing L–P's counterclaim. 554 F.Supp. 501 (D.Or.1982). The district court refused to certify this issue for an interlocutory appeal. After a trial, the district court assessed a civil penalty of $4 million against L–P on December 28, 1982. 554 F.Supp. 504 (D.Or.1982).

Eventually, a trustee was appointed to sell the Rocklin plant. 569 F.Supp. 1138 (D.Or.1983). The district court approved the sale of the plant on December 13, 1983. After deducting the trustee's expenses and commission from the civil penalty assessment, the district court entered a final judgment on December 30, 1983.

## II

## ANALYSIS

### A. *Interpreting Section 5(b)*

Section 5(b) of the Federal Trade Commission Act states, in pertinent part:

> [I]n the case of an order [issued by the Commission], the Commission *shall* reopen any such order to consider whether such order (including any affirmative relief provision contained in such order) should be altered, modified, or set aside, in whole or in part, if the person, partnership, or corporation involved files a request with the Commission which

makes a *satisfactory* showing that changed conditions of law or fact require such order to be altered, modified, or set aside, in whole or in part.

15 U.S.C. § 45(b) (emphasis added). L–P contends that its petitions to reopen under section 5(b) were sufficient to require the FTC to reopen the order compelling L–P to sell the Rocklin plant. The FTC contends that section 5(b) only required it to reopen the order upon a finding that L–P's request contained a "satisfactory" showing of changed circumstances. Without hearing any evidence, examining any exhibits, or making any findings of fact, the FTC summarily concluded that L–P's petitions had "failed to demonstrate changes of law or fact or public interest considerations warranting reopening."

### 1. *The Standard of Review*

■ The construction of a statute is a question of law that is reviewable de novo. *United States v. Wilson,* 720 F.2d 608, 609 n. 2 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984). It is true that we must show "great deference to the interpretation given the statute by the officers or agency charged with its administration." *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *see Chevron, U.S.A. v. Natural Resources Defense Council, Inc.,* —— U.S. ——, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *Kunaknana v. Clark,* 742 F.2d 1145, 1150 (9th Cir.1984); *cf. Office of Communication of the United Church of Christ v. FCC,* 707 F.2d 1413, 1422–23 (D.C. Cir.1983) (noting that only limited deference is due when interpreting an agency's governing statute). We must, however, reject administrative constructions of a statute that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement. *Federal Election Commission v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981); *MarkAir, Inc. v. CAB,* 744 F.2d 1383, 1385 (9th Cir.1984).[1]

---

**1.** The FTC invokes the general presumption against the reopening of final agency orders.

*See ICC v. Jersey City,* 322 U.S. 503, 514, 64 S.Ct. 1129, 1134, 88 L.Ed. 1420 (1944); *ASARCO, Inc.*

## 2. *The Legislative History*

Prior to 1980, the decision to reopen an order was purely within the discretion of the FTC. In 1980, however, Congress passed the Federal Trade Commission Improvements Act ("the Act"), Pub.L. No. 96–252, 94 Stat. 374 (1980), which added the disputed language to section 5(b). Congress passed the Act in response to several highly controversial actions by the FTC. Senator Howard Cannon described the Act's background as follows:

The real reason that we have proposed this legislation for the FTC is because the Commission appeared to be fully prepared to push its statutory authority to the very brink and beyond. The FTC lost sight of the necessity to listen to the evidence and legal arguments of its opponents. Good judgment and wisdom had been replaced with an arrogance that seemed unparalleled among independent regulatory agencies. The FTC brought this legislation upon itself because its own chairman sought to "venture in the unchartered [sic] territory" of the Federal Trade Commission Act.

126 Cong.Rec. S5681 (daily ed. May 21, 1980). After the House and the Senate passed different bills, a Conference Committee drafted the version that was passed into law.[2]

Section 2 of the Act, which added the disputed language to section 5(b), received little attention from Congress. In fact, the House bill did not even refer to the reopening of orders. H.R. 2313, 96th Cong., 1st Sess. (1979). Instead, Senator John Warner proposed the addition of section 2 during deliberations by the Senate Committee on Commerce, Science, and Transportation. S.Rep. No. 500, 96th Cong., 1st Sess. 34 (1979), *reprinted in* 1980 *U.S.Code Cong. & Ad.News* 1073, 1102, 1136. The Senate version would have added the following language to section 5(b): "[T]he Commission shall reopen any order issued by it

under this section ... if the [party bound by the order] files a request with the Commission stating with particularity the changed conditions of law or fact that require such order to be altered, modified, or set aside." S. 1991, 96th Cong., 1st Sess. § 2 (1979). The Senate Committee explained the provision as follows:

This section codifies existing Commission procedures by requiring the Commission to reopen an order if the specified showing is made. The Commission will be obliged to consider whether changed conditions have caused a company under order to be unfairly disadvantaged vis-a-vis its competitors. For example, if a company were required to make certain affirmative disclosures of information when it sold a product, but then over the course of several years its major competitors were placed under orders requiring no comparable disclosure in the sale of the same type of product, the first company would be able to bring this changed condition of law to the Commission's attention with the assurance that the Commission will reexamine the original affirmative relief provision. The same kind of reexamination would be required if the factual situation had changed significantly, for instance: If the person demonstrates the business practice or conduct subject to a cease and desist order was no longer carried on, hence, the order would be modified or set aside.

The Committee strongly emphasizes that unmeritorious, time-consuming and dilatory requests are not to be condoned. A mere facial demonstration of changed facts or circumstances is not sufficient. To accomplish this the section provides two safeguards. First, only an entity subject to an order may avail itself of this section. Second, the allegation of changed conditions must be stated "with particularity." The Commission, to re-

*v. OSHA,* 746 F.2d 483, 501 (9th Cir.1984). The cases cited by the FTC are distinguishable because they involve the refusal to reopen proceedings in the absence of a statute. By amending § 5(b) in 1980, Congress precluded the application of the general presumption to cases involving FTC orders.

**2.** The Act became effective on May 28, 1980, which was almost a month before the rejection of L–P's first petition.

emphasize, may properly decline to reopen an order if a request is merely conclusory or otherwise fails to set forth specific facts demonstrating in detail the nature of the changed conditions and the reasons why these changed conditions require the requested modification of the order.

S.Rep. No. 500, *supra,* at 9–10, U.S.Code Cong. & Admin.News 1980, p. 1111.

The Conference Committee drafted the present language of the Act, replacing the "stating with particularity" requirement with the "satisfactory showing" requirement. The Conference Report offered only one sentence of explanation: "The conference substitute adopts the Senate provision, but with a modification that requires parties seeking reconsideration to make a 'satisfactory showing' of changed conditions of law or fact." H.R.Rep. No. 917, 96th Cong., 2d Sess. 27 (1980), U.S.Code Cong. & Admin.News 1980, p. 1144. It is difficult to determine the effect of this change. When the FTC issued regulations to implement section 2, however, it tracked the language of the Senate Report, which was based on the "stating with particularity" requirement, in defining a "substantial showing." 16 C.F.R. § 2.51(b) (1984).

### 3. *The District Court's Interpretation*

Under the district court's interpretation of the statute, section 5(b) only requires the FTC to reopen an order when the FTC decides that the petition contains a satisfactory showing of changed conditions of law or fact. 554 F.Supp. at 503–04. After listing L–P's arguments in favor of reopening the order and noting that the FTC disagreed, the district court stated: "These are matters for the discretion of the agency

and my review is a narrow one." *Id.* at 504. L–P contends that the district court's interpretation of the statute was incorrect. Under L–P's interpretation, the FTC must reopen an order whenever the petition is objectively satisfactory.[3]

■ The legislative history of the Act shows an intent to curtail the FTC's discretion. If the FTC is allowed to reject a petition to reopen, other than one that is meritless on its face, without making findings and without offering a clear statement of its reasons for rejecting the petition, the intent of Congress would be defeated. Accordingly, we find that a summary rejection of a petition to reopen is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A);[4] *see also Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 103 S.Ct. 2856, 2869, 77 L.Ed.2d 443 (1983) ("[A]n agency must cogently explain why it has exercised its discretion in a given manner . . . .")

### B. *Changed Conditions of Law or Fact*

■ The record before us consists of L–P's petitions to reopen, which allege various changed conditions of law and fact, and the FTC's letters denying the petitions as inadequate. On this record, we cannot evaluate the respective claims of the parties. Nevertheless, an examination of L–P's petitions reveals substantive allegations that are not facially frivolous.

L–P asserted changed conditions of both law and fact. L–P alleged that the forest products industry recession was a substan-

---

**3.** The FTC argues that a satisfactory showing of changed circumstances is not sufficient to require reopening. Instead, it argues that the changed circumstances must *require* the modification of the order. While the literal wording of the statute seems to support that interpretation, in fact that interpretation is incorrect. The phrase "require such order to be altered, modified, or set aside, in whole or in part" describes the type of changed circumstances that must be shown, not the persuasiveness of the showing. As the Senate Report notes, section 5(b) "does not require that the Commission modify any order; rather the requirement is

that the Commission consider . . . whether to modify an order. . . ." S.Rep. No. 500, *supra,* at 10, U.S.Code Cong. & Admin.News 1980, p. 1111.

**4.** We do not reject L–P's position that a petition to reopen must only be objectively satisfactory. Because we find that the FTC's rejection of L–P's petition was in violation of § 706(2)(A), however, we need not decide whether L–P is correct. Nothing in this opinion should be read as a final, definitive interpretation of the 1980 amendment to § 5(b).

tial changed condition of fact that occurred after the entry of the consent order. Because of the recession, significant changes have occurred in the forest products industry. L–P sought reopening on the ground that those changes were sufficient to support modification of the consent order. L–P alleged that the recession also forced it to waive its option to purchase one particleboard plant and to convert another plant to the production of a different product. Accordingly, L–P sought reopening on the ground that its production capacity was reduced, thus requiring modification of the consent order. L–P also alleged that new data showed an absence of cross-elasticity of demand between MDF and particleboard. Finally, L–P alleged that several FTC decisions had changed the law with regard to market definition, so that the merger between L–P and Fibreboard was no longer subject to challenge.

We do not suggest that L–P's petitions required the FTC to modify the consent order. Nevertheless, we hold that the FTC's failure to make sufficient findings to support its denial of L–P's petition was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." [5]

### C. *The Requested Relief on Appeal*

L–P argues that the appropriate relief from the district court's erroneous granting of a summary judgment in favor of the FTC is to dismiss the civil penalty action. We disagree. Even if the FTC had granted the petition to reopen, the order would have remained in effect. S.Rep. No. 500, *supra*, at 10. Accordingly, we lack a statu-

tory or jurisdictional basis for dismissing the civil penalty action.

Since the Rocklin plant has been divested pursuant to a valid, stipulated judgment, we see no reason to disturb the proceedings before the district court with regard to the divestiture. L–P took no steps to stay the district court's order of sale pending appeal or to appeal from that order. The divestiture issues are now moot.

The civil penalty assessment presents an entirely different question. The conduct of L–P in attempting to delay the divestiture while its petitions were pending was not totally unjustified. The FTC's conduct in summarily rejecting L–P's petitions, on the other hand, violated section 706(2)(A) of the Administrative Procedures Act.

We vacate the civil penalty assessment and remand to the district court with instructions to enter an order compelling the FTC to enter specific findings with regard to L–P's petitions. After the FTC enters such findings, the government may reapply to the district court for the imposition of an appropriate civil penalty. Upon such an application, the district court shall consider the conduct of L–P and the FTC as reflected in the existing record. The district court shall also consider any other relevant evidence or arguments.[6]

### III

### CONCLUSION

We reverse the granting of the summary judgment in favor of the FTC on L–P's counterclaim, vacate the civil penalty assessment, and remand to the district court for further proceedings in accordance with this opinion.

---

**5.** The FTC repeatedly mentions the fact that, under the consent order, L–P waived its right to "further procedural steps" and "to seek judicial review or otherwise to challenge or contest the validity of the order." L–P has not demanded "further procedural steps" and is not seeking judicial review of the order. L–P has requested the FTC to reopen the order, which is not a challenge to the validity of the order.

**6.** In light of our disposition of this appeal, the district court's method of assessing the civil penalty and the district court's refusal to allow

L–P to discover certain documents are not ripe for review. *Cf. NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975) (holding that documents relating to predecisional government deliberations are privileged). We also do not reach L–P's argument that the civil penalty should be reduced in light of the FTC's delaying tactics and its refusal to approve a sale of the plant to Bohemia, Inc., which ultimately purchased the plant from the trustee.

REVERSED IN PART, VACATED IN PART, AND REMANDED.