**FREMONT–MADISON IRRIGATION DISTRICT, Petitioner-Appellant,**

v.

**UNITED STATES DEPARTMENT OF the INTERIOR, Respondent-Appellee.**

No. 84–4013.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 8, 1985.

Decided June 20, 1985.

Kent W. Foster, Donald L. Harris, Holden, Kidwell, Hahn & Crapo, Idaho Falls, Idaho, for plaintiff-appellant.

Laura D. Millman, U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before KILKENNY, KENNEDY and NORRIS, Circuit Judges.

KILKENNY, Circuit Judge:

This is an appeal from the district court's grant of summary judgment in favor of the appellee. We affirm.

## FACTS AND PROCEEDINGS BELOW

The Fremont-Madison Irrigation District (appellant) represents some 3,500 Idaho farmers who have traditionally depended on unreliable water sources for the irrigation of their land. In an effort to alleviate this chronic water problem the appellant contracted in 1969 with the United States, through the Department of the Interior's (appellee's) Bureau of Reclamation (Bureau), for the construction of what was to become Teton Dam and related facilities for the storage and movement of water.

Under the terms of this contract, the appellant agreed to purchase the additional water provided by this project and to pay that portion of the Dam's costs allocated to irrigation, with the understanding that no payments would be due until five years after the Dam had begun operating.

The Dam collapsed shortly after completion in 1976 and before any stored water was delivered to the appellant. Two years later, the appellant filed a claim seeking damages for the loss of this source of water in the sum of $71,562,000.00, a figure derived from the Bureau's estimate of the cost to repair the Dam.

Although the appellant's claim mentioned several different statutes, the basis for relief was the Teton Dam Disaster Assistance Act of 1976, Pub.L. No. 94–400, 90 Stat. 1211 (1976) (the Act). The appellant specifically mentioned only Section 7 of the Act when it tendered its claim, arguing that Section 7 entitled it to "an appropriate agreement to finance the repair and reconstruction of its works." The appellant's claim was denied by the Solicitor for the stated reason that neither Section 7 of the Act nor the 1969 contract could be construed to require the United States to rebuild the Dam. This denial was affirmed on reconsideration.

The appellant appealed to the Teton Dam Ad Hoc Board of Appeals (the Board), arguing for the first time that it was proceeding under Section 2 of the Act as well as Section 7. The appellant further contended that it sought neither to enforce the 1969 contract nor to have the Dam rebuilt, but instead wanted compensation for the loss of its property, *viz.*, the putative rights of storage and beneficial use of water contained by the Dam. The administrative law judge (ALJ) to whom the appeal was referred affirmed the Solicitor's ruling and denied the claim. The ALJ further held that the appellant was barred from amending its claim to one under Section 2 after the issuance of the Solicitor's ruling on the original claim, and that Section 2 was inapplicable to the claim anyway, because that

Section was intended solely to compensate individuals for such direct, tangible property losses as death, personal injury, and physical damage to home, farm and business equipment.

The appellant appealed this ruling to the full Board. In affirming the ALJ, the Board viewed the appellant's claim to be one for lost anticipated benefits and held that the loss of such an intangible interest was not compensable under Idaho law. Further, the Board held that Congress had not intended to compensate for losses attributable to anticipated benefits except to the limited extent set out in Section 4(d) of the Act, which did not apply to the appellant's situation.[1]

Having exhausted its administrative remedies, the appellant filed a petition in Idaho federal district court seeking to have the Board's decision vacated. Upon the filing of cross-motions for summary judgment, the district court granted summary judgment in favor of the appellee and dismissed the petition, holding that the appellant had no cognizable property interest under the terms of the 1969 contract. The appellant has timely appealed to this court.

## DISCUSSION

The issue presented for review is whether the loss of the appellant's interest in the Dam's storage of water and the expectancy of its use is compensable under the terms of the Act.

### Standard of Review

The standard of review as set out in the statute relates solely to factual findings, *i.e.,* "The decision of the Secretary incorporating his findings of fact therein, if supported by substantial evidence on the

record considered as a whole, shall be conclusive." Pub.L. No. 94–400, § 9(b), 90 Stat. 1211, 1213 (1976). To the extent we are concerned with the appellee's interpretation of the Act, we must accord great deference to that interpretation. *United States v. Louisiana-Pacific Corp.,* 754 F.2d 1445, 1447 (CA9 1985).

■ However, a district court's grant of summary judgment is reviewed *de novo. Canyoneers, Inc. v. Hodel,* 756 F.2d 754, 757 (CA9 1985). This is so, even where the district court's grant of summary judgment is predicated on an interpretation of state law. *Triangle Min. Co. v. Stauffer Chem. Co.,* 753 F.2d 734, 738 (CA9 1985). Finally, and because the district court's decision does not speak directly to the appellant's Section 7 argument, we note that we may affirm that decision on any ground finding support in the record. *City of Las Vegas v. Clark County,* 755 F.2d 697, 701 (CA9 1985).

### Section 7 Claim

■ As already noted, the appellant's claim originally mentioned only Section 7 of the Act as the basis of its claim for relief.[2] Section 7 is concerned with the repair of irrigation facilities damaged by the failure of the Dam, and allows for such repair by authorizing the appellee "to enter into agreements with the owners of such facilities to finance the repair or reconstruction thereof." Pub.L. No. 94–400, § 7, 90 Stat. 1211, 1213 (1976).

In denying the appellant's claim, the Solicitor stated the appellee's interpretation of this Section in the following language: "[This Section] was included in the Act so that the Secretary could immediately

---

**1.** This section provides compensation for direct investments in on-farm structures made in anticipation of their use by the expected availability of the Dam's stored water, but subsequently rendered valueless or nearly so by the Dam's failure.

**2.** "In order to expedite the repair and restoration of irrigation facilities damaged as a direct result of the failure of the Teton Dam, the Secretary is authorized and directed to enter into

agreements with the owners of such facilities to finance the repair or reconstruction thereof to the standards and conditions existing immediately prior to the failure of Teton Dam, either by direct payment or through construction contracts administered by the Bureau of Reclamation to the extent the cost of repairs or construction are not covered by insurance. The cost of such repairs shall be nonreimbursable." Pub.L. No. 94–400, § 7, 90 Stat. 1211, 1213 (1976).

repair or have repaired irrigation facilities existing and in use on June 5, 1976, excluding part one of the [Teton Dam] project, so that water could be provided to save the crops that had survived the flood. The Congress did not mean it to authorize the repair or reconstruction of the irrigation facilities included in part one of the project.

"Section 491.1–2 of the regulations governing the processing of claims under the Act states that a claim for loss of property must be presented by the owner of the property at the time of the incident (June 5, 1976). Section 7 of the act states the Secretary is authorized to enter into agreements with owners to finance the repair or reconstruct irrigation facilities. The Teton Dam and its irrigation facilities belong to the United States (see Article 34 of the June 27, 1969 contract). * * The claimant was not the owner of the Teton Dam and its facilities and cannot claim for the damages thereto."

It is undisputed that the irrigation facilities in question were constructed as part one of the Teton Dam project, and Article 34 of the 1969 contract makes clear that the Dam and these irrigation facilities were owned by the appellee and not by the appellant at the time of the Dam's failure. Because it was not the intent of Congress to repair or rebuild the Dam, see, e.g., H.R. Rep. No. 94–1423, 94th Cong., 2d Sess. 9, 14 (1976); 122 Cong.Rec. 27,493 (1976) (remarks of Rep. Flowers); 122 Cong.Rec. 28,698 (1976) (remarks of Rep. Lujan); *but see Teton Dam Disaster Assistance Act: Hearing on S. 3542 Before the Subcomm. on Energy Research and Water Resources of the Senate Comm. on Interior and Insular Affairs*, 94th Cong., 2d Sess. 67 (1976), it necessarily follows that Congress could not reasonably have intended the appellee to contract with itself for the repair of its own facilities. We therefore conclude that the appellee's construction of Section 7 of the Act was a reasonable one, and will not be disturbed here.

*Section 2 Claim*

 The appellant contends that it had vested property rights of storage and beneficial usage of the water contained by the Dam, and that it was deprived of this property when the Dam failed. We must determine whether the interests alleged by the appellant do in fact rise to the level of "property" under the terms of the Act.[3]

The word "property" is nowhere defined in the Act, and the governing regulations

---

**3.** "All persons who suffered death, personal injury, or loss of property directly resulting from the failure on June 5, 1976, of the Teton Dam of the Lower Teton Division of the Teton Basin Federal reclamation project which was authorized to be constructed by the Act of September 7, 1964 (78 Stat. 925) shall be entitled to receive from the United States full compensation for such death, personal injury, or loss of property. Claimants shall submit their claims in writing to the Secretary, under such regulations as he prescribes, within two years after the date on which the regulations required by section 5 are published in the Federal Register. Claims based on death shall be submitted only by duly authorized legal representatives." Pub.L. No. 94–400, § 2, 90 Stat. 1211, 1211 (1976).

The appellee argues that this court should not entertain the appellant's Section 2 claim because of the appellant's alleged failure to comply with the procedural requirements of that Section. Section 2 mandates the filing of all claims within two years of the date of publication of the governing regulations. Pub.L. No. 94–400, § 2, 90 Stat. 1211 (1976). These regulations were published on September 27, 1976 at 41 Fed.Reg. 42,201. Additionally, all claims must be submitted as a single claim, with any amendments permissible only prior to a determination by an authorized official. 43 CFR §§ 419.1–0(b) and (c). Because the appellant neither specifically raised a Section 2 claim with its original Section 7 claim of August 9, 1978, nor petitioned for leave to amend its claim thereafter, the appellant was arguably barred both procedurally and by passage of time from attempting to raise its Section 2 claim after either September 27, 1978 (two years after the regulations' publication) or October 5, 1978 (the date of the Solicitor's ruling).

Whatever the merits of this argument, we note that both the ALJ and the Board elected to address the merits of the appellant's Section 2 claim, and the Board did not treat the claim as being jurisdictionally barred. Where the agency responsible for interpreting its own statute does not view a claim as being barred, we will ordinarily defer to that decision. *Cf., Alcaraz v. Block*, 746 F.2d 593, 606 (CA9 1984) (construction of statute's applicable regulations by agency charged with their administration entitled to deference).

are likewise silent as to the meaning of the term. *See* 43 CFR § 419.0–5 (1976). Further, an examination of the Act's legislative history sheds little light on just what Congress meant by "property": Examples of "property loss and farm damage" were given as "loss of crops, fertile land, and livestock; and damage of railroad equipment, private homes, businesses, and farm equipment." H.R.Rep. No. 94–1423, 94th Cong., 2d Sess. 9, 14 (1976). The Act does declare, however, that "Except as otherwise provided herein, the laws of the State of Idaho shall apply[.]" Pub.L. No. 94–400, § 3(a), 90 Stat. 1211, 1211 (1976). Because of the absence of evidence of a Congressional intent to define "property", the application of state law is in order. *See Industrial Indem. Ins. Co. v. United States,* 757 F.2d 982, 985 (CA9 1985).

Idaho law recognizes two types of property: real and personal. Idaho Code § 73–114(1) (1973); Idaho Code § 55–102 (1979). "Personal property" is defined to include "money, goods, chattels, things in action, evidences of debt and general intangibles as defined in the Uniform Commercial Code—Secured Transactions." Idaho Code § 73–114(3) (1973). "General intangibles" are defined as "any personal property (including things in action) other than goods, accounts, chattel paper, documents and instruments, and money." Idaho Code § 28–9–106 (1980). These include "miscellaneous types of contractual rights and other personal property.... Examples are ... rights to performance." Idaho Code § 28–9–106 official comment (1980). The appellant argues that it has contractual rights to performance, that these rights constitute general intangibles under the law of Idaho, and that general intangibles are a form of property.

Whatever the merits of this argument, we note that the appellant has only argued one side of the coin, *i.e.,* under Idaho law, "[t]he word property ... signifies all valuable rights or interests *which are protect-*ed *by law." State v. Davis,* 81 Idaho 61, 66, 336 P.2d 692, 695 (1959) (emphasis added).[4] The so-called "hold harmless" clause of paragraph 33 of the 1969 contract states that "[n]o liability shall accrue against [the appellee] for ... shortages in the quantity of water ... resulting from the failure of facilities of the ... storage system...." In light of this clause, it is unclear just how the rights and interests claimed by the appellant would be protected by law. Absent such protection, they cannot rise to the level of "property" under the law of Idaho. The appellant's argument that the Act somehow unilaterally abrogated paragraph 33 of the 1969 contract is without merit.

Because the interests claimed by the appellant do not rise to the level of "property" under the law of Idaho, the appellant's arguments concerning the "accrual" and "appropriation" of some of the water stored by the Dam prior to its failure are equally without merit.

Finally, we note that our holding is consistent with congressional intent. Were we to grant the relief appellant seeks, it would be the practical equivalent of requiring the Government to rebuild the Dam. As noted above, that Congress clearly did not intend to do.

The decision of the district court is AFFIRMED.

KENNEDY, Circuit Judge, concurring:

In my view, it is unnecessary to reach the merits of the section 2 claim. Our affirmance under section 7 is fully sufficient. I concur.

---

**4.** This case discusses, in a criminal law context, Idaho Code § 18–3101, a predecessor statute of Idaho Code § 63–108 (1984 Supp.), which de-fines real property for purposes of taxation. Idaho Code § 63–109 (1976) defines personal property for purposes of taxation.