**UNITED STATES of America, Plaintiff–Appellee,**

v.

**LOUISIANA–PACIFIC CORPORATION, Defendant–Appellant.**

**No. 90–35733.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1991.

Decided June 24, 1992.

Clifford N. Carlsen, Jr., Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for defendant-appellant.

Thomas M. Bondy, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before: TANG, O'SCANNLAIN, and RYMER, Circuit Judges.

TANG, Circuit Judge:

Louisiana–Pacific Corporation ("LP" or "Company") appeals the decision of the district court imposing four million dollars in civil penalties for LP's delay in divesting certain assets pursuant to a consent order. LP also appeals the district court's decision sustaining the Federal Trade Commission's ("FTC" or "Commission") refusal to amend the consent order directing divestiture. We affirm.

## BACKGROUND

In February 1978, LP acquired Fibreboard Corporation. Among Fibreboard's assets was a plant in Rocklin, California, that manufactured medium density fiberboard. After the FTC expressed concerns about the merger's potentially anticompetitive effect, LP and FTC agreed on a consent order requiring divestiture of the Rocklin plant within two years of the date the order became final. The order contained no provision concerning the price to which LP was entitled in selling the plant. On March 28, 1979, the consent order became final. LP therefore had until March 28, 1981, to divest the Rocklin plant.

In February 1980, about halfway through the two-year divestiture period, LP filed with the FTC a petition to reopen the consent order pursuant to section 5(b) of the Federal Trade Commission Act, 15 U.S.C. § 45(b). The Commission denied the petition in June 1980. In February 1981,

LP requested an extension of eighteen months within which to divest the Rocklin plant. The FTC denied that request on March 27, 1981. The following day, the two-year divestiture period expired without LP selling the Rocklin plant. In June 1981, LP filed with the FTC a second petition requesting that the consent order be reopened. The Commission denied this petition a month later.

In September 1981, the United States on behalf of the FTC brought the present action for civil penalties pursuant to 15 U.S.C. § 45($l$) and for appointment of a trustee to oversee the divestiture of the Rocklin plant. Section 45($l$) provides for a $10,000 civil penalty for the offense of violating a final order of the FTC. According to the statute, "each day of continuance of [failure to obey or neglect to obey a final order of the Commission] shall be deemed a separate offense." The district court approved a sale of the plant on December 13, 1983, thus concluding the period in which civil penalties accrued. By this time, the total possible amount of penalties exceeded nine million dollars (i.e., roughly two and a half years multiplied by $10,000 per day).

In response to the government's complaint seeking civil penalties, LP filed a counterclaim alleging that the FTC violated the reopening statute and the Administrative Procedure Act ("APA"). LP sought dismissal of the action and an order compelling the FTC to reopen the consent order. In the first round of decisions below, the district court granted the government's summary judgment motion on LP's APA counterclaim and assessed civil penalties amounting to four million dollars against LP. The Company appealed.

We reversed summary judgment on LP's counterclaim, and vacated the civil penalties, holding:

The legislative history of the [Federal Trade Commission] Act shows an intent to curtail the FTC's discretion. If the FTC is allowed to reject a petition to reopen, other than one that is meritless on its face, without making findings and without offering a clear statement of its

reasons for rejecting the petition, the intent of Congress would be defeated. Accordingly, we find that a summary rejection of a petition to reopen is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 754 F.2d 1445, 1449 (9th Cir.1985) (quoting 5 U.S.C. § 706(2)(A)). We instructed the district court "to enter an order compelling the FTC to enter specific findings with regard to [LP's] petitions." *Id.* at 1450.

Pursuant to our mandate, the district court remanded the case to the FTC. The Commission responded with a lengthy statement of its reasons for denying LP's petitions to reopen. The district court held, however, that the FTC's response was not sufficient, stating that if a petition for reopening made a "satisfactory showing" then the Ninth Circuit decision required the FTC to reopen the order to consider whether it should be modified, altered, or set aside. 654 F.Supp. 962, 965 (D.Or.1987). Because LP stated the changed conditions with particularity, the district court remanded the case again for the FTC to reopen the case and to consider modification.[1] *Id.* We dismissed the United States' appeal from this second remand order. 846 F.2d 43 (9th Cir.1988).

On the second remand, the Commission disagreed with the district court's decision, but purportedly accepted it. Accordingly, the Commission instituted an adjudicative proceeding, received the parties' briefs, and heard oral argument. In a twenty-eight page opinion, the Commission denied the request to modify. The FTC concluded an evidentiary hearing was unnecessary because the Commission accepted as true all of LP's factual allegations.

The district court found that the FTC's opinion denying modification was manifestly not "arbitrary and capricious," that no rule of procedure applicable to the FTC required an evidentiary hearing on reopening, and that acceptance of LP's allegations as true did not necessitate modification. The district court granted summary judgment to the government on LP's APA counterclaim.

The district court also reconsidered its original decision imposing four million dollars in penalties. In doing so, the district court followed our previous instruction to "consider the conduct of [LP] and the FTC as reflected in the existing record [and to] consider any other relevant evidence or arguments." 754 F.2d at 1450 (footnote omitted). The district court determined that the FTC acted in good faith when it committed the error identified in our 1985 decision (i.e., summarily denying a non-frivolous petition to reopen). Thus, the court below held that the FTC's conduct—which had not been considered previously—did not merit a change in the penalties as originally assessed. *Cf.* 754 F.2d at 1450 n. 6 (deferring decision on effect of FTC's "delaying tactics"). The court also found that LP was not prejudiced by the FTC's deficient responses to the petitions to reopen, in part because "LP's failure to make a good-faith effort to sell the plant, not the pendency of motions to reopen, caused the vast majority of the delay" in divesting the Rocklin plant. In light of these additional considerations, the district court found no reason not to abide by its earlier penalty determination and reimposed penalties in the amount of four million dollars.

LP has timely appealed from this latest set of decisions.[2]

---

**1.** In the same decision, the district court rejected two of LP's defenses against the United States' claim for civil penalties. The district court concluded that LP's initial petitions for reopening did not invoke the doctrine of constitutional tolling. 654 F.Supp. at 963–64. The court also concluded that the FTC's summary denial of the petitions did not preclude the claim against LP for civil penalties. *Id.* at 964–65. Both of these issues are raised in this appeal.

**2.** The district court decisions implicated in this appeal are reported at 554 F.Supp. 504 (D.Or.

1982) (initial determination of four million dollars in penalties), *vacated,* 754 F.2d 1445 (9th Cir.1985); 654 F.Supp. 962 (D.Or.1987) (rejecting certain defenses to claim for penalties), *appeal dismissed,* 846 F.2d 43 (9th Cir.1988); 1990–2 Trade Cas. (CCH) ¶ 69,166, 1990 WL 138533 (D.Or. Aug. 16, 1990) (reimposing four million dollars in penalties); and 1990–1 Trade Cas. (CCH) ¶ 69,077, 1990 WL 106728 (D.Or. May 29, 1990) (rejecting LP's latest APA challenges).

## DISCUSSION

### I. APA Counterclaim

LP challenges three aspects of the FTC's failure to reopen. LP first contends that as a matter of statutory construction, if an order is reopened, and if the allegations of the petition to reopen are taken as true, then the Commission is required to alter, modify, or set aside the order. Second, LP argues that the FTC abused its discretion in failing to take evidence. Third, LP asserts that, if the facts alleged in its petitions to reopen are taken as true, then it was arbitrary and capricious for the Commission not to modify the consent order.

### A. STANDARD OF REVIEW

■ We review de novo the district court's grant of summary judgment in favor of the government on LP's counterclaim under the APA. *See Sierra Pac. Indus. v. Lyng*, 866 F.2d 1099, 1105 (9th Cir.1989). Statutory construction is also reviewed de novo. *United States v. Louisiana–Pacific Corp.*, 754 F.2d 1445, 1447 (9th Cir.1985). While great deference must be given to the interpretation rendered by the agency charged with a statute's administration, we must "reject administrative constructions of a statute that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement." *Id.*

Regarding the FTC's compliance with the APA:

> The APA provides that final agency action shall be held unlawful and set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or if it was taken "without observance of procedure required by law."
>
> Review under the "arbitrary and capricious" standard is narrow, and a court may not substitute its judgment for that of the agency. Nonetheless, the agency must articulate a satisfactory explanation for its action, including a "rational connection between the facts found and the choice made." In reviewing that explanation, a court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."

*Sierra Pacific*, 866 F.2d at 1105 (citations omitted).

### B. STATUTORY CONSTRUCTION

■ LP contends that the statute providing for reopening of FTC orders requires that, if the allegations in a petition for reopening are sufficient to require reopening, and if the FTC takes the facts alleged to be true, then the FTC must alter, modify, or set aside the order in the manner requested.[3] We disagree.

In our 1985 decision in this case, we indicated that petitions for reopening need not plead facts that *require* modification of the order. 754 F.2d at 1449 n. 3. While this conclusion was drawn in the context of deciding when the FTC must elaborate on its reasons for denying a petition to reopen, the logic is equally applicable in the present context. Orders are reopened simply to consider whether they should be modified. *Id.; see* 15 U.S.C. § 45(b)(2) ("Commission shall reopen any such order to consider whether such order ... should be altered, modified, or set aside...."). A decision to

---

**3.** The relevant provision, section 5(b) of the Federal Trade Commission Act, provides in pertinent part:

> After the expiration of the time allowed for filing a petition for review, if no such petition has been duly filed within such time, the Commission may at any time, after notice and opportunity for hearing, reopen and alter, modify, or set aside, in whole or in part, any report or order made or issued by it under this section, whenever in the opinion of the Commission conditions of fact or of law have so changed as to require such action or if the public interest shall so require, except that ... in the case of an order, the Commission shall reopen any such order to consider whether such order (including any affirmative relief provision contained in such order) should be altered, modified, or set aside, in whole or in part, if the person, partnership, or corporation involved files a request with the Commission which makes a satisfactory showing that changed conditions of law or fact require such order to be altered, modified, or set aside, in whole or in part.
>
> 15 U.S.C. § 45(b).

reopen thus does not necessarily entail a decision to modify the order. Reopening may occur even when the petition itself does not plead facts requiring modification. The FTC therefore did not err in concluding that it could leave intact an order after reopening even if it assumed the pleaded facts to be true.

## C. FTC DECISION NOT TO TAKE EVIDENCE

■ LP also attacks as an abuse of discretion the FTC's decision not to take evidence upon reopening. We reject this argument. In taking LP's allegations to be true, the FTC stated that "[LP] has not in its briefs, at oral argument or by motion attempted to show any material controverted facts that require resolution." Similarly, in this appeal, LP does not point to any facts besides those appearing in the petitions to reopen that the Commission should have taken into account. The FTC's decision not to take evidence on reopening was not violative of the APA.

## D. FAILURE TO MODIFY CONSENT ORDER

■ Finally, LP contends that it was arbitrary and capricious of the FTC not to modify the consent order in view of LP's allegations, which were taken to be true. As the district court noted, however, the Commission conducted a "painstaking analysis of each of the changed conditions LP cited as a basis for modification." On appeal, LP raises again the changed conditions necessitating modification of the consent order.

In particular, LP points to the following developments: (1) the deep recession affecting the timber industry in 1979, (2) the subsequent restructuring of LP assets, (3) the recognition of a new test for anticompetitive effects resulting from merger, (4) changes in the product market on which the consent order was premised, (5) subsequent acquisitions by other companies, and (6) changes in the law. However, LP does not explain why any of these changes are so compelling as to require not only modifi-

cation of the consent order, but also a finding that the Commission's refusal to do so was arbitrary and capricious. To the contrary, the Commission adequately accounted for each of these factors in denying LP's request to modify the consent order.

### 1. Deep Recession in Timber Industry

The Commission concluded that changed economic conditions would not require modification of the consent order mandating divestiture of the Rocklin plant because LP agreed to divestiture "without regard to price." LP does not dispute that the consent order did not provide for sale at a "fair price." The Commission's refusal to reopen on this basis discloses a "rational connection between the facts found and the choice made." *Sierra Pacific*, 866 F.2d at 1105 (quotation omitted).

### 2. Restructuring of Assets

The Commission also considered at length LP's argument that changes in its production capacity required modification of the order. Again, as the FTC concluded, these changes are not so compelling as to require modification of the consent order.

### 3. Herfindahl–Hirschman Index

LP points to the recognition of a new test, the Herfindahl–Hirschman Index, for determining whether a merger would have anticompetitive effects. LP's contention is that its acquisition of Fibreboard Corp., and particularly the Rocklin plant, would not have been challenged if this test had been applied. Because this argument does not pertain to a change in conditions existing at the time of the merger, it does not suffice to compel modification of the consent order.

### 4. Product Market

LP contends that the consent order was premised on a product market defined to include both particleboard and medium den-

sity fiberboard, and that changes in this allegedly unified market exposed the premise as faulty. Even assuming that this argument concerns changed conditions, LP does not indicate any compelling reason why this development should result in modification of the consent order.

### 5. Subsequent Acquisitions by Other Companies

Here, LP argues that, because other companies were allowed to make acquisitions similar to LP's, LP should not be bound by the consent order. Again, this does not present a compelling reason to alter the consent order. In agreeing to the order, LP waived the right to show the lawfulness of the acquisition. The fact that another company might eventually show a similar acquisition to be lawful was a sufficiently foreseeable event at the time LP agreed to the consent order to preclude modification of the consent order on this basis.

### 6. Changes in the Law

The FTC devoted more than three pages of its opinion to a discussion of LP's contention concerning changes in the law. On appeal, LP omits any discussion of an alleged change so compelling as to require modification of the consent order. We therefore agree with the district court that the FTC did not violate the APA in denying LP's request for modification of the consent order.

### II. LP's Defenses Against the Penalty Claim

■ The district court denied summary judgment to LP on two of its defenses against the government's claim for civil penalties. On appeal, LP contends the district court erred in rejecting defenses based on the doctrine of constitutional tolling and the Commission's alleged misconduct in addressing LP's petitions to reopen.

### A. CONSTITUTIONAL TOLLING

LP contends that the civil penalties contemplated by 15 U.S.C. § 45(*l*) should not accrue during the pendency of its petition to reopen and the subsequent litigation to contest the validity of the FTC's decision on the petition. LP invokes the doctrine of constitutional tolling applied in *United States v. Pacific Coast European Conference*, 451 F.2d 712 (9th Cir.1971) ("*PCEC*").

In *PCEC*, we determined that the shipping conference's resort to judicial review of an agency decision tolled the accrual of penalties until review was complete. The basis for this decision was that it was not "constitutionally permissible to assess a statutory penalty for noncompliance with a statute the validity of which had not yet been judicially determined." *Id.* at 718.

In the present case, however, LP waived its right to obtain judicial review of the consent order. Furthermore, the Company does not now contest the validity of the order, nor did it contest its validity in its petitions to reopen.

Under very similar circumstances, the Second Circuit rejected application of the constitutional tolling doctrine. In *Brown & Williamson Tobacco Corp. v. Engman*, 527 F.2d 1115 (2d Cir.1975), *cert. denied*, 426 U.S. 911, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976), the court faced a challenge to FTC interpretations of final consent decrees. Under the FTC interpretations, major tobacco companies were subject to extensive civil penalties under the same statute at issue here, 15 U.S.C. § 45(*l*). 527 F.2d at 1116. The Second Circuit observed:

> Here the penalties which the appellants seek to have stayed did not attach prior to their opportunity to contest the validity of the orders. Rather, the risk of penalties began to accrue only after the appellants entered into consent decrees which acknowledged the validity of the decrees and waived the right further to challenge their validity.... In the instant case, however, it is not the *validity* of the consent orders that appellants contest; rather it is their interpretation by the FTC.

*Id.* at 1119 (original emphasis). For the same reasons, we reject LP's argument urging constitutional tolling.

## B. FTC MISCONDUCT AS A BAR TO PENALTIES

 LP cites the decision in *Top Value Meats, Inc. v. FTC*, 586 F.2d 1275 (8th Cir.1978), for the proposition that the Commission's "misconduct" in summarily denying LP's initial petitions to reopen should bar the government's claim for penalties. The district court rejected this argument, in part because the court concluded that the FTC had in fact acted in good faith in its misapplication of the reopening statute. As the district court pointed out, our prior decision in this case indicated that the Commission's initial reading of the statute was supported by its literal wording. 754 F.2d at 1449 n. 3.

In *Top Value Meats*, the Eighth Circuit was presented with a situation where the Commission itself sought a penalty under a statute—much like the one here—that required the penalty claim to be brought by the United States on behalf of the FTC. 586 F.2d at 1281–82. Because the FTC, not the United States, brought the claim, the court disallowed the penalty. It did so not because of equity or "misconduct," but on a technical interpretation of the statute authorizing the penalty. *See id.* at 1282–83. No such technical failure is evident in the present case. Thus, the decision in *Top Value Meats* is not supportive of LP's argument, even if we assume the district court erred in concluding that the FTC's failure to reopen the consent order was done in good faith. We reject LP's argument that the government's penalty claim is barred by conduct of the FTC.

## III. Penalty Amount

 Finally, LP contends the district court abused its discretion in awarding the government four million dollars in civil penalties. The district court's award of a civil penalty pursuant to 15 U.S.C. § 45(*l*) is reviewed for an abuse of discretion. *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 229 n. 6, 95 S.Ct. 926, 930, n. 6, 43 L.Ed.2d 148 (1975).

The district court conducted a thorough analysis in calculating the original four million dollars in penalties. After we vacated this assessment, *see* 754 F.2d at 1450, and after further proceedings, the district court set out a second penalty analysis. The court thoughtfully reconsidered its previous decision in light of additional findings made in response to this court's instructions.

LP challenges the penalties on six grounds: (1) the district court's purported failure to consider evidence beyond that existing at the time of the first penalty assessment; (2) the improper consideration of deterrence as an independent factor in assessing penalties; (3) the inadequate definition of "bad faith" and LP's purported good faith in attempting to divest the Rocklin plant; (4) the absence of public harm resulting from LP's failure to divest in a timely manner; (5) the district court's reliance on incorrect profit figures; and (6) the improper use of vindication of the FTC as a factor in assessing the penalties.

### 1. Existing Record

To begin with, LP challenges the district court's interpretation of our instruction that, "[u]pon [the government's renewed penalty] application, the district court shall consider the conduct of [LP] and the FTC as reflected in the existing record. The district court shall also consider any other relevant evidence or arguments." 754 F.2d at 1450 (footnote omitted). LP claims that the district court erroneously interpreted this instruction to mean that the penalties should be based only on the record existing at the time of the initial penalty assessment.

This argument fails. In reassessing the penalties to be imposed, the court did look beyond the record existing at the time of the first penalty determination. For example, the court indicated that it "reviewed ... 'relevant evidence or arguments' the parties have presented in the latest phase of this protracted litigation."

## 2. Deterrence

LP argues that the district court improperly considered deterrence as an independent factor relevant in assessing the penalties. We disagree. LP's only reason for attacking deterrence as a separate factor is that it is already "implicit in each of the [other] criteria." In view of the inherent nature of penalties as deterrents, however, we find no error in the district court's recognition of deterrence as a separate factor in assessing the penalties imposed here.

## 3. Bad Faith

LP contends that "bad faith" is not sufficiently defined, and offers the following definition of good faith: "honesty in fact in the conduct or transaction concerned." LP then argues that, contrary to the implicit finding of the district court, the evidence shows it was honest in its dealings with the FTC and did not act in bad faith.

LP's definition of bad faith is too narrow. The government persuasively contends that bad faith is a concept with a well-settled meaning in the law. The broader definition includes "neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Black's Law Dictionary* 127 (5th ed. 1979). Given this definition, there is substantial support for the finding that LP acted in bad faith. The key fact—not challenged on appeal—is that LP persisted in asking a very high price all the while it was trying to sell the Rocklin plant, despite its unconditional obligation to divest itself of the plant.

## 4. Public Harm

LP contends the district court failed to consider "public harm" in assessing the penalties and that the court "made no inquiry into or finding of public harm." This

contention is erroneous. In its 1982 opinion, the district court expressly found that "minimal harm was inflicted upon the public." In 1990, the court reiterated that public harm was a relevant factor in both the 1982 penalty assessment and the 1990 reassessment. The district court's statement that "public harm, which I assume, is not a factor in determining the size of the penalty" should therefore be understood as indicating only that the court saw no reason to increase the penalties in an effort to compensate the public for harm suffered. We reject LP's argument that the penalties should have been *reduced* based on the absence of public harm since the district court did not specifically include an amount intended to compensate for public harm.

## 5. Incorrect Profit Figures

LP's penultimate contention is that the district court relied on improper evidence in concluding that LP had benefited from its violation of the consent order.[4] Specifically, LP challenges the district court's reliance on two figures: Rocklin profit of $548,683 for the first year and a half following expiration of the consent order, and an estimated Rocklin profit of $4.2 million in 1980.

Regarding the first figure, LP contends that the correct amount is, at the most, $269,000 and, at the least, $4,000. These figures are apparently based on application of a tax rate of 51%. Yet the district court determined that, "[d]ue to favorable treatment of capital gains for timber corporations, [LP's] tax rate is almost non-existent." LP does not contest the determination of the applicable tax rate. We therefore accept the $548,683 figure as correct.

LP challenges the second figure, $4.2 million, on the basis that this was an estimated profit for Rocklin in 1980, and that the actual profit derived during 1980 was $2.17 million. However, the district court only used the $4.2 million figure to observe

---

**4.** The district court's discussion of the benefit obtained by LP appears in the court's 1982 decision. The district court reaffirmed its original benefit analysis in 1990.

that, "[d]uring the divestiture period, *the projected profits* from Rocklin were sufficient to exceed the maximum penalty which can be assessed in this case, i.e., $3.65 million per year." The district court's statement thus remains correct even if LP is also correct regarding the *actual* 1980 profit at Rocklin.

Moreover, even assuming the district court was speaking of actual profit, its statement could still be correct. The divestiture period covered nine months of 1979 (in which there was a total annual profit of four million dollars), all of 1980 (in which LP claims there was a $2.17 million profit), and three months of 1981 (for which the Rocklin profit is not immediately known). The total actual profit during this period could thus exceed $7.3 million, the maximum amount of penalties which could accrue over two years.

In any event, the actual penalties totalling four million dollars imposed by the district court did not approach the maximum penalty amount that could have been applied. Furthermore, in discussing profitability at Rocklin, the district court concluded only that "[LP] has benefited from retention of Rocklin and this is an element I will consider in assessing the penalty." Ultimately, any error in the figures to which the district court referred does not undermine the penalties assessed by the court.[5]

## 6. Vindication of the FTC

Finally, LP argues that vindication of the FTC is not a proper factor in a case where the Commission failed to follow statutory requirements in an allegedly "singleminded, unwarranted, and unlawful" manner.

The district court, however, concluded that the FTC acted in good faith when it violated the APA. Vindication of the consent order and of the FTC's position was not an improper factor in assessing penalties against LP. We find that the district court did not abuse its discretion in awarding four million dollars in civil penalties against LP.

## CONCLUSION

The district court correctly rejected LP's counterclaim and defenses to the government's civil penalty action. We find no abuse of discretion in the penalties assessed by the district court. The judgment of the district court is

AFFIRMED.

---

**5.** LP also assails the district court's reliance on figures pertaining to a period in which LP was not in violation of the consent order. The district court observed, however, that "defendant has, in fact, benefited from holding and operating Rocklin, even *after* the divestiture deadline."

The district court could fairly rely on pre-violation figures to draw this inference.