William F. GARNETT,
Plaintiff–Appellant,

v.

Louis W. SULLIVAN, Secretary of Health and Human Services,
Defendant–Appellee.

No. 89–3280.

United States Court of Appeals,
Fourth Circuit.

Argued March 9, 1990.

Decided June 12, 1990.

William Lewis Botts, III (argued), Rappahannock Legal Services, Fredericksburg, Va., for plaintiff-appellant.

Gabriel DePass, Office of the Gen. Counsel, Dept. of Health and Human Services (argued), Stuart E. Schiffer, Acting Asst. Atty. Gen., John M. Sacchetti, Chief Retirement, Survivors and Supplemental Assistance Litigation Branch, Dept. of Health and Human Services, Baltimore, Md., Henry E. Hudson, U.S. Atty., and Robert W. Jaspen, Asst. U.S. Atty., Richmond, Va. (on brief), for defendant-appellee.

Before ERVIN, Chief Judge, and HALL and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge:

William F. Garnett ("Garnett") appeals the decision of the district court granting summary judgment to the Secretary of Health and Human Services (the "Secretary") and affirming the Secretary's denial of a waiver or reduction of an overpayment of benefits which the Secretary now seeks to recover. We affirm in part and remand with instructions.

I

Garnett began receiving disability benefits under the Social Security Act, 42 U.S.C. §§ 301 *et seq.* (the "Act"), based on coronary artery disease, as of February 1973. On September 12, 1985, the Secretary determined that Garnett's earnings from part-time work as a school bus driver, a job

he had returned to in 1974, exceeded $300 per month as of September 1982, which raised a presumption of substantial gainful activity (SGA).[1] An individual whose earnings meet the criteria of SGA is considered not disabled.

Garnett was unable to rebut the presumption of SGA. Therefore, his benefits were terminated, and an overpayment was assessed against him for $14,408.40. Garnett's request for waiver or reduction of the overpayment was denied because he was found to be at fault in causing the overpayment for his failure to report his annual earnings for the years 1982, 1983, 1984, and 1985.[2] The decision was upheld by the Secretary upon reconsideration, and again following a personal conference on the issue.

A formal hearing was held before an administrative law judge ("ALJ"), who rejected Garnett's arguments that the overpayment should be waived because of economic hardship, lack of fault, or under principles of equity. Garnett's additional argument that no overpayment would have occurred but for the Secretary's failure since 1980 to adjust SGA limits to reflect current market conditions was not addressed in the ALJ's opinion, but was rejected by the Appeals Council in its denial of his request for review of the ALJ's decision. The Appeals Council adopted the ALJ's decision as the final decision of the Secretary.

Garnett brought this action in the United States District Court for the Eastern District of Virginia in April 1988, seeking review of the Secretary's decision under 42 U.S.C. § 405(g) of the Act and attempting to raise various other grounds for jurisdiction. Garnett sought a waiver or reduction of the overpayment, and a declaration that the Secretary's failure to adjust SGA limits was arbitrary and capricious and contrary to law. With respect to the latter claim, he sought additional discovery of documents which were not a part of the administrative record. A federal magistrate denied Garnett's motion to compel discovery, holding that Garnett was not entitled to *de novo* review or to present evidence not presented to the Secretary. The magistrate subsequently denied Garnett's motion for reconsideration of that order and recommended granting summary judgment for the Secretary on all claims. The district court granted summary judgment for the Secretary.

## II

■ Garnett first challenges the Secretary's finding that his earnings were SGA. Our review of the Secretary's decision is limited under 42 U.S.C. § 405(g) to determining if the Secretary's findings are supported by substantial evidence and if the correct law was applied. Garnett argues that his bus route, which was the shortest available and took only one hour per day, could not be SGA because of the minimal time spent in work. Although *Cornett v. Califano,* 590 F.2d 91 (4th Cir.1978), stands for the general proposition that Garnett's ability to work only a few hours a day is not the ability to engage in SGA, that general rule is not to be blindly applied. *See* 20 C.F.R. § 404.1574 (indicating that time spent in work is not the only basis on which the ability to perform SGA is evaluated). In this case, Garnett performed essentially the same duties performed by other non-disabled school bus drivers. Unlike *Cornett v. Califano,* 590 F.2d at 93, where the claimant's disability was such that "the average employer would not hire or keep the claimant employee because of absenteeism that would result from her physical ailments," there was no evidence that Garnett's disability interfered with the regularity of his job performance. Nor was the amount of time Garnett spent in work atypical for his position, since school buses are

1. For calendar years 1979 to 1990, if a disability claimant's earnings averaged more than $300 per month, a presumption of SGA arose. Conversely, if a claimant's earnings averaged less than $190 per month, a presumption arose that the claimant was not engaged in SGA. If a claimant's earnings averaged between $190 and $300 per month, no presumption arose and the Secretary considered other information to show SGA. 20 C.F.R. § 404.1574.

2. The Secretary became aware of the claimant's earnings from a posting of wages submitted by his employer.

not generally driven for many hours a day. Moreover, the length of Garnett's route did not affect his earnings, which were based on length of service. In this context, we cannot say that the amount of time spent in work was alone sufficient to rebut the presumption of SGA.

■ Although Garnett also argues that a school bus driver job is not "a means of livelihood," and thus not SGA, the operation of the presumption of SGA is supported by evidence that Garnett was a part-time bus driver before his disability, and has used those earnings partially to support his family since 1968. Garnett's disability did not prevent him from earning wages comparable to those earned by other school bus drivers. Therefore, the Secretary's finding that Garnett's earnings became SGA is supported by substantial evidence.[3]

■ Although Garnett's earnings were not found to be SGA prior to the time that they activated the presumption of SGA in September 1982, we reject his contention that the lack of a finding of SGA prior to 1982 operated as a concession that his earnings would not be judged to be SGA at any future date. To do otherwise would be to undermine the scheme of presumptions developed by the Secretary, and to go beyond the scope of our judicial review.

Therefore, we uphold the finding that Garnett's earnings eventually became SGA. However, we remand the dismissal of Garnett's claim that his medical expenses should have been deducted from his monthly income such that his adjusted average income from September 1982 to December 1983 should not have raised the presumption of SGA.[4] The Secretary agrees that medical expenses are an allowable deduction under 20 C.F.R. § 404.1576(c)(5), but states that the medical expenses claimed in

the administrative record were not clearly delineated from dental expenses which cannot be deducted. The Secretary has conceded before this court that the plaintiff submitted proper documentation at the Secretary's suggestion. The documentation was submitted to the district court, which did not act upon it. Therefore, we remand to the district court with directions to remand to the Secretary for reconsideration of the date on which Garnett's earnings became SGA, taking into consideration proper medical expense deductions.

### III

■ Pursuant to regulations which implement § 204 of the Act, the Secretary must recover an overpayment of Title II benefits from a beneficiary who is "at fault" in causing an overpayment, but the Secretary cannot recover an overpayment if: (1) the overpaid individual is without fault *and* (2) recovery would defeat the purpose of Title II of the Act, or be "against equity and good conscience." 20 C.F.R. § 404.506.

In addition to challenging the Secretary's finding that his income was SGA, Garnett challenges the Secretary's finding that he was at fault because he failed to file a timely annual report of earnings (ARE) for 1982, 1983, 1984, or 1985. An individual is at fault if the overpayment resulted from the "failure to furnish information which he knew or should have known to be material." 20 C.F.R. § 404.507(b). Garnett admits that he did not file AREs for 1983, 1984, and 1985, but claims to have filed for 1982, although neither he nor the Secretary could provide a copy of any form he claims to have filed for 1982.

Garnett argues that he should not be held responsible for his failure to file annual AREs because he testified that the ad-

3. Although the Secretary attempted to present additional evidence of Garnett's ability to engage in SGA in the years 1986, 1987, and 1988, we decline to consider such evidence as it was not part of the administrative record or before the district court. We uphold the finding of SGA based on substantial evidence in the existing administrative record.

4. Garnett has additionally argued that his 1982 earnings were incorrectly averaged and should not have raised the presumption of SGA for that year. However, Garnett has offered no reason for us to depart from the lower court's conclusion that the claim is barred because he failed to raise it before the Secretary. *See Cleaton v. Secretary, Dep't of Health and Human Services,* 815 F.2d 295, 300 n. 8 (4th Cir.1987).

ministration did not send him the forms every year. However, there was evidence that Garnett initially conformed to the administration's procedures by notifying the administration of his return to work in 1974 and by filing AREs for years prior to 1982. Based on this evidence, the ALJ concluded that Garnett "knew or should have known" that continuing to report his annual income was material, such that he was at fault even if the administration failed to provide him with the forms each year. Moreover, the Secretary contends that it had requested earnings information from Garnett in 1982 and in 1983 but received no response. Had the ARE reports been properly filed and acted upon, no overpayment would have occurred. We hold that this evidence is more than sufficient to support the Secretary's finding that Garnett was "at fault" in causing the overpayment.

■ Further, we conclude that Garnett's reliance on 20 C.F.R. § 404.510a, which provides that an individual is "without fault" if he accepts an "overpayment because of reliance on *erroneous information from an official source* within the Social Security Administration," is misplaced. (Emphasis added.) Garnett appears to have mistakenly assumed that higher earnings limits applicable to his wife's retirement benefits also applied to his disability benefits. The fact that Garnett's mistake resulted from his own confusion regarding correct information and not from any erroneous information provided by the administration precludes him from relying on § 404.510a. Garnett's reliance on 20 C.F.R. § 404.510 is also misplaced since that regulation is relevant only to individuals not otherwise at fault.

Because we uphold the Secretary's finding that Garnett was at fault in causing the overpayment, we do not reach his remaining arguments that recovery should be waived because it would cause him economic hardship or be inequitable. See 20 C.F.R. § 404.506.

## V

Garnett also challenges the Secretary's failure to adjust SGA limits from 1980 to 1988, arguing that the $300 limit used during that period was unreasonable and that his income would not have raised a presumption of SGA if the Secretary had annually adjusted limits upward using a "wage indexing" method of adjustment used by some prior administrations. In addition to asserting jurisdiction under 42 U.S.C. § 405(g) to raise this claim, Garnett attempted to gain broader judicial review under 28 U.S.C. § 1331 and 28 U.S.C. § 1361, but we affirm on the reasoning of the district court that jurisdiction does not arise under those statutes.

■ As noted below, this court need only determine whether the Secretary's failure to raise SGA limits was contrary to his authority or arbitrary and capricious. See *Atkins v. Rivera,* 477 U.S. 154, 162, 106 S.Ct. 2456, 2461, 91 L.Ed.2d 131 (1986); 5 U.S.C. § 706. The district court determined that the Secretary's failure to adjust SGA limits was not contrary to his authority or arbitrary and capricious and we agree. Congress has delegated to the Secretary the authority to create regulations to determine SGA, but has not mandated the form of SGA regulations or suggested criteria for updating them. In relevant part, the statutory delegation of authority provides:

> The Secretary shall by regulations prescribe the criteria for determining when services performed or earnings derived from services demonstrate an individual's ability to engage in substantial gainful activity.... An individual whose services or earnings meet such criteria shall ... be found not to be disabled....

42 U.S.C. § 423(d)(4). Section 423(d)(4) is strong evidence of Congress' intent to give the Secretary the broadest discretion possible to define and adjust SGA limits. Pursuant to this authority, the Secretary adopted 20 C.F.R. § 404.1574, which lists the criteria for SGA. Where a regulation is founded on an explicit delegation of rulemaking authority, the regulation is entitled to great weight. *Atkins v. Rivera,* 477 U.S. at 162, 106 S.Ct. at 2461.

Although the Secretary has periodically adjusted SGA guidelines to reflect market conditions in the past, nothing in the statute or its legislative history has ever required him to do so. Likewise, the Secre-

tary has never been required to use a specific method of adjustment when he has chosen to alter SGA limits. In addition to market conditions, the Secretary has properly considered such factors as the costs of the disability insurance program. *See Califano v. Boles*, 443 U.S. 282, 296, 99 S.Ct. 2767, 2775, 61 L.Ed.2d 541 (1979). This is not a case where the Secretary has chosen to rely on an invalid or outdated analysis of a single factor, such as market conditions. *See Maine Ass'n of Interdependent Neighborhoods v. Petit*, 659 F.Supp. 1309 (D.Me. 1987)[5] (Secretary's actions in setting an asset value limit for medicaid eligibility based on twelve-year-old data was arbitrary and capricious.). It is noteworthy that SGA limits remained constant from 1968 to 1973, and the wage indexing method of adjustment which Garnett proposes was not used from 1974 through 1976. Given his broad discretion, the Secretary's decision not to adjust SGA limits between 1980 and 1988 cannot be said to be contrary to his authority.

■ A proposed regulation published on July 25, 1989, recommends that the upper limit on SGA be increased to $500 in 1990. Prior to the publication of this proposed regulation, Garnett sought to obtain a copy of it through additional discovery in the district court. He also sought through discovery an explanation by the Secretary for his failure to adjust the SGA limits. The district court did not err in denying Garnett's motion to compel discovery because the evidence sought through discovery was immaterial to his claim.

■ Garnett contends that the mere existence of the current proposal to raise SGA limits is evidence that the failure to adjust SGA figures earlier was an abuse of discretion. He further argues that the lack of retroactivity in the proposed regulation is contrary to prior practice and is arbitrary and capricious. However, as mentioned, there are simply no requirements that the Secretary annually adjust SGA figures or publish a rationale for inaction, adhere to a single method of calculating adjustments, or employ retroactivity when adjustments

are made. The decisions embodied in the current regulation do not evidence a change in or revocation of a past regulation; rather, they reflect at most a difference in policy considerations from prior administrations.

Unlike past regulations or statutory interpretations, pure policy concerns of past administrations are not binding on future administrations, nor, of course, may current policy concerns be imposed retroactively upon past administrations. Past provisions for retroactivity and the current proposal to raise SGA limits in this case evidence only the prevailing policy concerns of the time which cannot be imposed either prospectively or retroactively upon other administrations. Each Secretary has broad discretion to perform his own studies and reach his own conclusions, so long as any alleged departure from the policy of prior administrations does not eliminate the continuing criteria for SGA mandated by 42 U.S.C. § 423(d)(4). We fully agree with the district court that the tasks of formulating, implementing, and enforcing SGA regulations are those of the Secretary and not of the courts. Since clear criteria for SGA existed from 1980 to 1988, the Secretary's SGA limits—stationary as they were—were not arbitrary and capricious but were within the discretion afforded him.

Finally, Garnett baldly asserts that the Secretary's failure to raise SGA limits violated his substantive due process rights and his equal protection rights by creating an improper dividing line for classifying disabled and non-disabled claimants. We uphold the dismissal of these claims because they are unsupported by the evidence.

## VI

In sum, we uphold as based on substantial evidence the findings that Garnett was engaged in SGA and that he was not without fault in causing the overpayment. Therefore, Garnett is not entitled to a waiver or reduction of the overpayment. We also affirm the dismissal of Garnett's claims with respect to the Secretary's fail-

---

5. Unlike the instant case, in *Petit* the legislative history also indicated that Congress intended that the Secretary's regulations "permit adjust-

ments for changing economic conditions." 659 F.Supp. at 1323.

ure to raise SGA limits from 1980 to 1988. However, we remand as to Garnett's claim that his medical expenses, appropriately documented, should have been deducted from his monthly income from September 1982 to December 1983. Upon remand, the district court shall remand this claim to the Secretary for consideration of whether Garnett's adjusted average income for that period fell below $300 per month or is otherwise SGA and whether a recalculation of the overpayment is necessary.

AFFIRMED IN PART AND REMANDED WITH INSTRUCTIONS.