**Karen LAMBERTON, Individually, on Behalf of her minor children and on behalf of all other similarly situated, Plaintiffs,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, in her official capacity, and Charles E. Cowan, Director, Department of Economic Security, Defendants.**

**No. CV 91–609 TUC JMR.**

United States District Court,
D. Arizona.

July 7, 1994.

William E. Morris, Southern Ariz. Legal Aid, Inc., Tucson, AZ, for plaintiffs.

Don B. Overall, Asst. U.S. Atty., Tucson, AZ, and Charles P. Gillet, Office of the Regional Counsel, Dept. of HHS, Region IX, San Francisco, CA, and Bonnie E. Elber, Asst. Atty. Gen., Phoenix, AZ, for defendants.

## AMENDED ORDER

ROLL, District Judge.

### INTRODUCTION

■ Plaintiffs are members of a class who have been or are being denied Aid to Families with Dependent Children ("AFDC") benefits because their ownership interest in a single motor vehicle exceeds the maximum allowable limit. This action challenges the validity of 45 C.F.R. § 233.20(a)(3)(i)(B)(2) which restricts to $1500 the equity value a household may have in an automobile. Named as defendants are Donna Shalala, Secretary of Health and Human Services ("HHS"), and Charles E. Cowan, Director, Department of Economic Security ("DES").[1] Class plaintiffs contend that the regulation is arbitrary, capricious and otherwise contrary to law, and is violative of the equal protection guarantee implicit in the fifth amendment to the United States Constitution.

■ The case is now before the Court on the parties' cross-motions for summary judgment.[2] Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden rests on the moving party to point out the absence of any genuine issue of material fact. Once satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). On a summary judgment motion, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens,* 533 F.2d 429, 432 (9th Cir.1976). The

1. Cowan has been sued in his official capacity pursuant to 42 U.S.C. § 1983. Where state regulations extinguish benefit entitlements secured by federal law, aggrieved individuals may claim denial of corresponding individual rights enforceable under § 1983. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Lamberton maintains that the DES regulations are contrary to Title IV–A of the Social Security Act and thus enforceable under § 1983.

2. This case was ready for judgment many months ago. Class plaintiffs asked for and received a stay to pursue additional discovery under Fed. R.Civ.P. 56(f). The motions were fully briefed as of January 18, 1994.

non-moving party's evidence is to be taken as true, and all inferences are to be viewed in the light most favorable to the non-moving party. *Eisenberg v. Insurance Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir.1987). When both sides have filed cross-motions, "each movant has the burden of presenting evidence to support its motion that would allow the district court, if appropriate, to direct a verdict in its favor." *High Tech Gays v. Defense Industry Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir.1990) (citation and quotations omitted).

For the reasons that follow, the Court concludes that there are no material issues of fact in dispute and that summary judgment in favor of the class is appropriate. Fed. R.Civ.P. 56(c).

## FACTUAL BACKGROUND

The undisputed facts are as follows. Plaintiff Karen Lamberton ("Lamberton") is the natural mother of her three children and sole adult in her household. Lamberton and her children became indigent when Lamberton's husband was sentenced to a term of imprisonment. The family liquidated their personal property and forfeited their home in a foreclosure proceeding. At the time the case was filed, Lamberton was attending community college and her three daughters were enrolled in elementary school.

The Lambertons previously received AFDC support, but their benefits were terminated upon reapplication in March of 1991. DES notified Lamberton that her adverse eligibility determination was due to excessive automobile ownership interest. DES valued Lamberton's vehicle, and her corresponding equity interest, at $4375.[3] Lamberton unsuccessfully appealed the decision to an administrative law judge. This lawsuit followed.

## STANDARD OF REVIEW

■ The Administrative Procedure Act ("APA") requires a reviewing court to set aside agency findings of fact which are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The scope of review is quite narrow. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Agency action having no rational basis in the record or manifesting a clear error of judgment may be rejected, but the court is not to substitute its judgment for that of the agency. *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378, 109 S.Ct. 1851, 1861–62, 104 L.Ed.2d 377 (1989); *United States v. Louisiana–Pacific Corp.*, 967 F.2d 1372, 1376 (9th Cir.1992). However, the court must ensure that "the decision is based on a consideration of the relevant factors...." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). An agency rule is considered arbitrary and capricious if the agency has relied on factors which Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence. *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983).

■ In reviewing an agency's construction of a statute, the court must reject those interpretations that are either contrary to clear congressional intent or frustrate the policy that Congress sought to implement. *Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781–82 n. 9, 81 L.Ed.2d 694 (1984). "Under the APA, an agency's discretion is not boundless, and [the court] must [be] satisf[ied] ... that the agency examined the relevant data and articulated a satisfactory explanation for its action based upon the record." *People of the State of California v. F.C.C.*, 905 F.2d 1217, 1230 (9th Cir.1990).

## DISCUSSION

AFDC is authorized under Title IV of the 1933 Social Security Act. 42 U.S.C. § 601 *et seq.* It is a cooperative federal-state program that furnishes subsistence payments to

---

**3.** Lamberton owns a 1985 Toyota Camry. She acquired the car from a relative for a nominal sum. The vehicle allows Lamberton to attend college and to transport her children to and from their schools. The Toyota replaced a 1973 Datsun that had prohibitively high maintenance costs.

eligible households with dependent children deprived of parental support. Although states have some authority over eligibility criteria, Congress and the Secretary of Health and Human Services determine limitations of the income and resources allowed qualifying households. *Figueroa v. Sunn,* 884 F.2d 1290, 1291 (9th Cir.1989).

In 1981, Title IV–A of the Social Security Act was amended under the auspices of the Omnibus Budget Reconciliation Act ("OBRA") to authorize the Secretary of HHS to adopt regulations excluding as a resource countable for purposes of AFDC eligibility, "so much of the family member's ownership interest in one automobile as does not exceed such amount as the Secretary may prescribe...." 42 U.S.C. § 602(a)(7)(B)(i). Within the year, the Secretary issued a notice of rulemaking which established $1500 as the maximum equity that could be disregarded.[4] The regulation as formally promulgated provides that a maximum of $1500 equity in an automobile may be disregarded for purposes of determining whether AFDC applicants own assets exceeding the maximum allowed eligible households.[5] 45 C.F.R. § 233.20(a)(3)(i)(B)(2). This regulation authorizes states to adopt federally approved assistance plans providing for an automobile equity of less than $1500, but not greater than that sum. In Arizona, AFDC eligibility determinations are made by the Department of Economic Security ("DES") pursuant to state plan provisions.[6]

### The $1500 Limit is Arbitrary and Capricious

■ In choosing the $1500 motor vehicle equity limit for AFDC recipients, the Secretary relied upon a survey conducted in 1979 by the Food and Nutrition Service ("FNS"). *See Food and Nutrition Service, Assets of Low Income Households: New Findings on Food Stamp Participants and Nonparticipants* (January 1981) (unpublished manuscript) [hereinafter "FNS Study"]. The Secretary interpreted the FNS study as establishing that 96% of food stamp recipients with automobiles had an equity interest no greater than $1500. Based on this information alone, the Secretary determined that the $1500 equity limit was "within the range of the vast majority of current [food stamp] recipients and given that the food stamp population tends to be, on the average, more affluent than AFDC recipients, this limit appears reasonable and supportable [for AFDC recipients]." 47 Fed.Reg. 5648, 5656–5657 (Feb. 5, 1982).

The Court finds that the FNS study did not provide a rational basis for the $1500 equity limit. In reaching this conclusion, the Court recognizes the work of Peter Fisher, Ph.D., who was commissioned to analyze the basis and consequences of the AFDC automobile equity rule. Dr. Fisher discovered that the FNS study concentrated on vehicle ownership interests among households in receipt of food stamps, which placed those families at income levels at or below the national average. Peter S. Fisher, *An Economic Investigation into the Basis for and Consequences of the H.H.S. Rule Eliminating from Eligibility for A.F.D.C. Benefits Families Who Have Over $1500 Equity in a Vehicle* 14–15 (May 1990) (unpublished manuscript) [hereinafter "Fisher Study"]. Dr.

---

4. Prior to the 1981 amendment, the Secretary had promulgated AFDC eligibility regulations that provided that state agencies could wholly exempt one automobile per applicant or household. 45 C.F.R. § 233.20(a)(3) (October 1, 1980).

5. The applicable federal and state regulations provide:
a) Households do not qualify for AFDC if they own liquid assets or other countable personal property, aside from an automobile, having a total value in excess of $1000.
b) In the event equity in an automobile exceeds $1500, the "excess" value may be applied against the basic $1000 asset limit.

c) Consequently, an AFDC household can own one automobile with a maximum equity value of $2500, but only if its members wholly lack funds on deposit or other liquid assets, and do not own any tangible personal property countable, at the broad discretion of states, against the $1000 general resource limit.

6. The state defendant has noted that DES has not adopted formal regulations implementing federal standards on allowable equity in a household vehicle. Regardless, the state is barred under federal law from adopting a more liberal automobile equity limit. DES has applied the $1500 limit in denying AFDC benefits to Lamberton.

Fisher posits that the FNS study is overbroad and does not accurately reflect the unique characteristics of AFDC households, relying instead upon a *presumed* overlap between membership in the AFDC population and food stamp eligible homes. Dr. Fisher points out that numerous AFDC households are comprised of recently divorced women and their minor children who experienced better economic circumstances during marriage and acquired more costly vehicles at that time.[7] Fisher Study at 5. Moreover, many of the children for whom AFDC payments are intended are school age and the transportation needs of their parents are exacerbated further.

Nor did the FNS findings properly account for the severe ownership limitations previously imposed upon the target population's ability to purchase and maintain an automobile. Households were automatically disqualified from the foodstamp program if they owned non-exempt vehicles valued at more than the allowable maximum, thus tainting the sample.[8] Thus, the Court cannot agree that the FNS study accurately surveys general ownership patterns. *See Hazard v. Sullivan*, 827 F.Supp. 1348 (M.D.Tenn.1992) (in its order granting plaintiffs' motion for preliminary injunction the court noted that "the food stamp asset limit screen[ed] out otherwise eligible families and did not reflect vehicle asset ownership among AFDC households. Several of the comments received by the Secretary before the regulation was adopted express the same sentiment ... the 'amount of equity value in cars retained by food stamp population is undoubtedly more a function of the resource limit set in the food stamp program than anything else.'") (citations omitted).[9]

Equally important to this decision is Dr. Fisher's data which indicates that the motor vehicle equity possessed by food stamp recipients was unknown as to 35.2% of that segment of the population.[10] Accordingly, the

---

**7.** Lamberton has produced a Census Bureau report published in 1984 which reveals that the lowest-income households owning motor vehicles held equity in them with an average value of more than $3000, over twice the maximum allowed AFDC families.

**8.** Since 1971, the food stamp program has been governed by uniform national rules on the maximum value of resources that households could own and still qualify for benefits. In 1977, the statutory limit on countable general resources was increased from $1500 to $1750, with specific limits imposed on motor vehicles, other than those directly used to produce household income, as follows:

(1) The gross market value of any such vehicle was deemed controlling so that any lien amount could not be subtracted from the price for which it would sell in an arms-length transaction;
(2) The vehicle was treated as an exempt asset if its gross market value was $4500 or less;
(3) Any value in excess of $4500 was to be counted against the household's $1500 asset limit, regardless of any debt owed on the vehicle;
(4) If the household's equity in the vehicle was greater than the amount by which the market value exceeded $4500, the higher figure was to be counted against the asset limit.
*See* Food and Nutrition Service, *Assets of Low Income Households: New Findings on Food Stamp Participants and Nonparticipants* (January 1981).

**9.** Since 1971, the food stamp program has been governed by uniform national rules on the maximum value of resources that households could own and still qualify for benefits. In 1977, the statutory limit on countable general resources was increased from $1500 to $1750, with specific limits imposed on motor vehicles, other than those directly used to produce household income, as follows:

(1) The gross market value of any such vehicle was deemed controlling so that any lien amount could not be subtracted from the price for which it would sell in an arms-length transaction;
(2) The vehicle was treated as an exempt asset if its gross market value was $4500 or less;
(3) Any value in excess of $4500 was to be counted against the household's $1500 asset limit, regardless of any debt owed on the vehicle;
(4) If the household's equity in the vehicle was greater than the amount by which the market value exceeded $4500, the higher figure was to be counted against the asset limit.
*See* Food and Nutrition Service, *Assets of Low Income Households: New Findings on Food Stamp Participants and Nonparticipants* (January 1981).

**10.** "The statistic cited by HHS—that 96% of food stamp recipients who own cars have equity in them of $1,500 or less—cannot be found in the [FNS] study. In fact, the data in the [FNS] report show only that 58.6% of recipients with cars had equity in all vehicles of $1,500 or less, 6.2% had equity exceeding that amount, and for the remaining 35.2% the amount of equity could not be determined.... If the HHS study in fact

FNS study does not establish that 96% of food stamp recipients owned vehicles with an equity interest of $1500. *See People of the State of California, supra.*

The Secretary answers Lamberton's motion primarily by arguing that fiscal concerns required and continue to justify the chosen equity limit. True, the regulation was enacted in response to a Congressional mandate to decrease federal spending and AFDC was targeted directly for major fiscal reductions. *Philadelphia Citizens in Action v. Schweiker,* 669 F.2d 877, 878–79 (3d Cir.1982) ("OBRA was the product of a major, highly publicized, and vigorously debated effort by Congress and the President to reverse the growth of federal spending by systematically reducing the level of expenditures in a wide range of federal programs."). The primary purpose of the OBRA provisions regarding the AFDC program was to "reduce or eliminate welfare benefits for those considered by Congress to be less needy than those completely without resources." *Id.* Congress intended OBRA to decrease the welfare rolls and costs by disbursing benefits "only to the most destitute." *Dickenson v. Petit,* 692 F.2d 177, 181 (1st Cir.1982).

At most, the Secretary has accurately recounted the political impetus for creating the limitation; this in no way, however, cleanses an imperfect rule making process. *See National Welfare Rights Organization v. Mathews,* 533 F.2d 637, 645–47 (D.C.Cir.1976).

### The Regulation Ignores Congressional Intent and is Irrational

The Court moreover finds that the regulation as promulgated exceeds the Secretary's authority because it fails to consider paramount congressional purposes. *Schrader v. Idaho Dept. of Health and Welfare,* 768 F.2d 1107, 1113–14 (9th Cir.1985). Lamberton recites a portion of the Social Security Act that provides:

> The state agency must ensure that all applicants for and recipients of aid to families with dependent children are encouraged, assisted, and required to fulfill their responsibilities to support their children by preparing for, accepting, and retaining such employment as they are capable of performing.

42 U.S.C. § 682(c)(1).

Dr. Fisher concluded that an automobile equity limit of $1500 translates into ownership of either a heavily encumbered car or older vehicles. Fisher Study at 17. According to the Fisher study, under the $1500 limit, an AFDC recipient is restricted to owning a car which is at least seven to nine years old with at least 90,000 miles on it and entails great operational expense. *Id.* Thus, rather than nurturing the goal of independence, the regulation forces recipients to acquire less reliable vehicles with high probability of frequent and/or expensive repair costs. *Id.* at 6. This, in turn, prevents or hinders self-sufficiency in aid beneficiaries. *See Schrader, supra.*

In adopting the regulation without concern for the effects on the stated Congressional purposes, the Secretary ignored a factor distinctly relevant to proper exercise of her decision making authority, ultimately rendering the resulting regulation arbitrary and capricious.[11]

relied on the same survey, which seems likely, then that survey does not appear to support the conclusion drawn by HHS." Peter S. Fisher, *An Economic Investigation into the Basis for and Consequences of the H.H.S Rule Eliminating from Eligibility for A.F.D.C. Benefits Families Who Have Over $1500 Equity in a Vehicle 11* (May 1990) (unpublished manuscript).

11. Lamberton additionally argues that the Secretary has acted arbitrarily and capriciously by promulgating more generous automobile regulations for Supplemental Social Security Income ("SSI") beneficiaries than for AFDC recipients. SSI is a need-based program providing cash benefits to persons with severe physical or mental impairments preventing them from engaging in any substantial gainful activity, and to destitute elderly individuals and couples. 42 U.S.C. § 1381. The SSI program is also administered by HHS, at the ultimate direction of the defendant Secretary. *See* 42 U.S.C. § 1382 *et seq.* SSI regulations currently authorize a $4500 automobile exemption, and allow a total exemption regardless of value if the vehicle is necessary for employment, medical treatment, or transportation of a handicapped person. 20 C.F.R. § 416.-1218. Although the Court finds merit in Lamberton's position, it makes its decision on other grounds and need not reach this question.

### The Regulation Fails to Consider Intervening Inflation

Lamberton further notes that the regulation imposing the $1500 vehicle equity limitation took effect in 1982 and has never been amended or modified since its adoption and must be considered irrational. Dr. Fisher has found, "[a] $1500 limit in 1990 is equivalent to a $901 equity value in 1979...." Fisher Study at 13. At least two courts in published opinions have agreed that the failure to account for intervening inflation renders a regulation irrational. *Hazard v. Sullivan,* 827 F.Supp. 1348 (M.D.Tenn.1993); *Maine Assoc. of Interdependent Neighborhoods v. Petit,* 659 F.Supp. 1309, 1323 (D.Me. 1987). Other courts have disagreed, however. *Falin v. Sullivan,* 776 F.Supp. 1097 (E.D.Va.1991), *aff'd per curiam,* 6 F.3d 207 (4th Cir.1993); *Gamboa v. Rubin, et al.,* Case No. 92–00397 (D. Hawaii 1993); *Hall, et al. v. Towey, et al.,* Case No. 93–1780–CIV–T–21B (M.D.Fla.1993); *Champion v. Shalala,* et al., 845 F.Supp. 1332 (S.D.Iowa 1992). *See also Garnett v. Sullivan,* 905 F.2d 778, 782 (4th Cir.1990) (the court rejected the notion that the Secretary must adjust Social Security Supplemental Security Income to market conditions, finding instead that "this court need only determine whether the Secretary's failure to raise ... limits was contrary to his authority or arbitrary and capricious.").

The Ninth Circuit has thus far had no occasion to decide whether a regulation may be deemed *per se* irrational because its drafters failed to account for the effects of intervening inflation, but has held that a federal agency endowed with regulatory authority is "obligated to reevaluate its policies when circumstances affecting its rulemaking proceedings change." *People of the State of California,* 905 F.2d at 1230. The Court will follow this general rule rather than the limited one defendants advance. In so ruling, the Court concurs with Judge Thomas A. Wiseman's observations:

> The fact that Congress, in OBRA, did not mandate a review of the apposite regulation to adjust for inflation does not alter this Court's opinion. First, congressional silence on the need for review of the effects of inflation does not necessarily equal a bar to such review. Second, the Secretary himself rendered this silence unimportant by promulgating a rationale for the regulation that implied sensitivity to changing financial conditions. Even if the Secretary generally has no affirmative duty to review regulations in the absence of congressional direction to do so, where a regulation's rationality is dependent on current socioeconomic conditions periodic review is essential to preserve that rationality.

*Hazard v. Sullivan,* 827 F.Supp. 1348, 1352 (M.D.Tenn.1993) (internal citations and quotations omitted).

### CONCLUSION

The Court finds the regulation under review, 45 C.F.R. § 233.20(a)(3)(i)(B)(2), to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Accordingly, **IT IS HEREBY ORDERED** that Class Plaintiffs' motion for summary judgment is **GRANTED** and that Defendant Donna Shalala's and Defendant Charles E. Cowan's individual and joint motions for summary judgment are **DENIED**. The Clerk of the Court is directed to enter a judgment declaring 45 C.F.R. § 233.-20(a)(3)(i)(B)(2) to be invalid. Defendants and their agents are **PERMANENTLY ENJOINED** from further enforcing or applying the aforementioned federal regulation and its state counterpart. All other motions are deemed moot by virtue of this order.