**Mitchell SMITH, an individual, Plaintiff–Appellant,**

**v.**

**U.S. FOREST SERVICE, an agency of the United States; Vaagen Timber Products, a Washington corporation, Defendants–Appellees.**

**No. 93–36187.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 12, 1994.

Decided Aug. 22, 1994.

Todd D. True, Sierra Club Legal Defense Fund, Seattle, WA, for plaintiff-appellant.

Joan M. Pepin, Stephen G. Bartell and Scott M. Farley, U.S. Dept. of Justice, Washington, DC, for defendant-appellee U.S. Forest Service.

Scott Horngren, Haglund & Kirtley, Portland, OR, for defendant-appellee Vaagen Timber.

Before: SCHROEDER, D.W. NELSON and William C. CANBY, Jr., Circuit Judges.

SCHROEDER, Circuit Judge:

This case involves an environmental challenge to a timber sale and harvest, known as the Gatorson Sale, in the Colville National Forest in Washington. The United States Forest Service has authorized the sale to Vaagen Timber Products, a logging company. The plaintiff-appellant, Mitchell Smith, a frequent recreational user of the area affected by the sale, sued both the Forest Service and Vaagen, seeking to enjoin the sale. He contended that the Forest Service's assessment of the environmental impact of the sale was inadequate under federal law for two reasons.

First, he asserted that the area affected by the sale contained in excess of 5,000 contiguous acres of unroaded land that had never been considered by the Forest Service for classification as wilderness. Under the Washington State Wilderness Act (WSWA), Pub.L. No. 98–339, 98 Stat. 299 (1984), and the National Environmental Policy Act of 1969 (NEPA), codified at 42 U.S.C. §§ 4321–4347, such large tracts of "uninventoried" land cannot be developed until wilderness classification has been considered. The agency had determined that the area was not roadless because it was divided, by an unpaved road used by jeeps, into two parcels of less than 5,000 acres each. Smith contended this decision was arbitrary and capricious.

Second, Smith asserted that the agency had not, in its NEPA disclosure documents, addressed the effect of the sale on a separate 5,000 acre roadless area partially comprised of inventoried land. Although he acknowledged that this area need not be considered for wilderness classification, he argued that the sale should not have been approved until the Forest Service had considered the impact of logging on this heretofore roadless area. The plaintiff relied upon our decision in *National Audubon Soc'y v. United States Forest Serv.*, 4 F.3d 832 (9th Cir.1993), in which we held that the Forest Service was required, under NEPA, to consider the environmental consequences of a logging operation on previously unroaded, albeit inventoried, expanses of land.

The district court ultimately entered summary judgment for the defendants, holding that the agency's conclusion that the uninventoried 5,000 acre expanse was roaded rather than unroaded was not arbitrary and capricious. With respect to Smith's second contention, the district court held that the WSWA barred its review of the adequacy of the NEPA documents prepared by the agency in connection with its decision to develop an area that includes partially inventoried land that had been released for nonwilderness use by Congress. The district court, however, enjoined most of the logging pending this appeal, which we have expedited.

 On the first issue, we hold that the district court correctly upheld the Forest Service's refusal to consider the wilderness option prior to approving the sale. The agency's determination that the jeep trail known as the "Thompson Ridge Road" was a road under applicable regulations was not arbitrary and capricious. We reverse the district court's denial of the injunction, however, because we conclude on the second issue that our decision in *National Audubon* requires the Forest Service to consider the effect of the proposed sale upon a 5,000 acre roadless area even though it includes inventoried land.

*Background*

In the Wilderness Act of 1964, Pub.L. No. 88–577, 78 Stat. 890, Congress directed the Department of Agriculture to identify "primitive" lands in the National Forest System and make recommendations to Congress as to those lands deserving of "wilderness" status. *See* 16 U.S.C. § 1132. The areas ultimately granted wilderness status by Congress must, by law, remain protected and free from development. *Id.* § 1131. From 1972 to 1979, the Forest Service conducted

two inventories, known as RARE I and RARE II, to identify roadless areas in the nation's forests and to make recommendations to Congress as to which of these areas should be protected and which should be released for nonwilderness uses. *National Audubon*, 4 F.3d at 834.

After the Forest Service completed the RARE II inventory in 1979, we held that the Environmental Impact Statement (EIS) prepared by the agency in connection with its inventory did not comply with NEPA. *California v. Block*, 690 F.2d 753 (9th Cir.1982). In response, Congress passed several Acts, including the Washington State Wilderness Act (WSWA), Pub.L. No. 98–339, 98 Stat. 299 (1984), granting wilderness status to some of the land inventoried pursuant to RARE II, and releasing the remainder of the inventoried land for nonwilderness use. To prevent further environmental challenges to its decision to release roadless lands in the Washington National Forest System, Congress directed in the WSWA that RARE II be deemed adequate consideration of the suitability of inventoried land for classification as wilderness. WSWA § 5(b)(2), 98 Stat. at 303. Congress further directed that the wilderness option need not be considered by the agency prior to the development of any parcel of roadless land in the Washington National Forest System that had not been inventoried pursuant to RARE II if the parcel was smaller than 5,000 acres in size. *Id.* (incorporating WSWA § 5(d)(2)). Thus, under the WSWA, the Forest Service is required to consider the wilderness option prior to authorizing development in a roadless area only if (1) the area was not inventoried pursuant to RARE II; *and* (2) the area is larger than 5,000 acres in size.

The Gatorson Planning Area, the tract containing the Gatorson Sale logging sites, is comprised of thousands of acres of land in the Thompson Ridge region of the Colville National Forest. The western half of the Gatorson Planning Area occupies part of a large parcel of land that was inventoried pursuant to RARE II and is known as the "Twin Sisters" RARE II Area. The eastern half of the planning area occupies part of a large parcel of uninventoried land, referred to as the "Conn Merkel Area" by the parties.

The Twin Sisters Area was released for nonwilderness use in the WSWA, and, since the passage of the WSWA, roads and logging sites have been developed in the area. The Forest Service has acknowledged, however, that roughly two thousand acres along the eastern border of this inventoried land, the border adjacent to the Conn Merkel Area, are currently unroaded. The Conn Merkel Area is an uninventoried tract of 6,737 acres. It is bisected by a jeep trail known as Thompson Ridge Road.

Authorization of logging sales by the Forest Service involves a two-stage process. First, the agency develops a Forest Plan to establish management goals on a forest-wide basis. Forest Plans may include proposals for specific logging projects and otherwise set management goals for particular regions of the forest. Implementation of the development strategies outlined in Forest Plans occurs at the second stage, in which the Forest Supervisor proposes individual, site-specific projects in accordance with the programmatic Forest Plan. *See generally Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1511–12 (9th Cir.1992). In order to satisfy its obligations under NEPA,[1] the Forest Service prepares an EIS in connection with each Forest Plan to evaluate the forest-wide environmental effects of the management scheme outlined in the Plan. *See id.*; 36 C.F.R. §§ 219.10(a)–(c), 219.12(f). At the implementation stage, the agency either prepares a second, site-specific EIS, or, in an EA, makes a finding that the individual project will have no significant environmental

---

1. NEPA requires the preparation of an EIS in connection with "major Federal actions significantly affecting the quality of the human environment...." 42 U.S.C. § 4332(2)(C). Prior to the completion of an EIS, an agency engages in an Environmental Assessment (EA) to determine whether an EIS is necessary. *Greenpeace Action v. Franklin*, 14 F.3d 1324, 1328 n. 4 (9th Cir. 1992) (citing 40 C.F.R. § 1501.4(a)–(c)). If, on the basis of the EA, the agency determines that the proposed action will not significantly affect the environment, it need not prepare an EIS and may issue instead a Finding of No Significant Impact (FONSI). *Id.* (citing 40 C.F.R. § 1508.-13).

impact beyond that discussed in the Forest Plan EIS.

In 1988, the Forest Service issued a Forest Plan for the Colville National Forest, which included a schedule for logging activities. The EIS prepared in connection with the Plan specifically analyzed the effects of the proposed sales on the unroaded, inventoried lands in the forest, including the Twin Sisters RARE II Area. Although the Colville Forest Plan EIS did not specifically describe the Conn Merkel Area, the agency concluded in that document that the area surrounding the Twin Sisters Area was, as of 1988, in a roaded condition. Smith did not challenge the sufficiency of, or the conclusions made in, the Forest Plan EIS. The Forest Service did not prepare a second EIS in connection with the Gatorson Sale, but instead, on September 24, 1992, issued a final EA finding no significant impact beyond that addressed in the Forest Plan EIS, thus authorizing the sale.

Smith sought reconsideration by the agency of the Forest Supervisor's decision to authorize the sale without preparing a site-specific EIS. On April 12, 1993, the decision was upheld. Smith brought this suit in district court on May 18, 1993, against the agency and Vaagen. He sought a preliminary injunction postponing the sale, arguing (1) that the Conn Merkel Area comprised an uninventoried roadless parcel of more than 5,000 acres and therefore had to be considered for possible wilderness designation under the WSWA before the sale; and (2) that the agency had failed to adequately address in its NEPA documents the impact of the sale on 6,000 acres of "roadless resources" that included part of the inventoried Twin Sisters area.

The district court initially entered a preliminary injunction, enjoining the sale, and directed the Forest Service to conduct a survey to determine whether the Conn Merkel Area was in fact an unroaded area of more than 5,000 acres. In response, the agency submitted a report to the court in which it found that the Thompson Ridge Road qualified as a road under agency regulations, and that it bisected the Conn Merkel Area into two separate parcels of less than 5,000 acres

each. On December 13, 1993, the court entered summary judgment in favor of the appellees. The court concluded that the agency's classification of Thompson Ridge Road as a road was not arbitrary and capricious, and that because the sale did not affect a 5,000 acre roadless tract of uninventoried land, the agency's NEPA documents were sufficient. The court extended its preliminary injunction in part, enjoining timber harvesting on most of the Gatorson logging units pending appeal, but permitting some limited helicopter logging. This court denied Smith's motion to enjoin all logging, but set this case for expedited appeal.

*Discussion*

I. Waiver.

■ The appellees initially contend that Smith has failed to exhaust his administrative remedies because he did not challenge the Forest Service's decision, in the 1988 Forest Plan, not to classify the Conn Merkel Area as roadless. Smith concedes that he mounted no such challenge to the Forest Plan, but he argues, we conclude correctly, that his failure to challenge factual determinations made in the Forest Plan EIS does not prevent him from challenging the sufficiency of the agency's NEPA disclosure at the implementation stage.

The appellees rely exclusively on *Idaho Conservation League v. Mumma*, 956 F.2d 1508 (9th Cir.1992). In that case, plaintiffs challenged a Forest Service decision, in a Forest Plan, not to recommend for wilderness designation certain roadless regions in the Idaho Panhandle Forest. Taking a position that is exactly opposite to the position it takes here, the Forest Service argued that the plaintiffs' challenge would not be ripe until site-specific logging projects were authorized. The agency reasoned that there could be no actionable injury to the plaintiffs until the decision to implement the Plan was made, because, prior to that time, it was not absolutely certain that any logging project would go forward.

We rejected this argument, finding that although the project might be halted at the implementation stage, the nonwilderness des-

ignation in the Forest Plan worked immediate harm by, at the least, making logging more likely. *Id.* at 1516. In a passage relied upon heavily by the appellees, we said,

> if the agency action only could be challenged at the site-specific development stage, the underlying programmatic authorization would forever escape review. To the extent that the plan pre-determines the future, it represents a concrete injury that plaintiffs must, at some point, have standing to challenge. [footnote omitted] That point is now, or it is never.

*Id.* The appellees seize on the "now or never" language from this passage and contend that it represents a determination by this court that site-specific projects proposed in a Forest Plan can only be challenged at the Forest Plan stage.

The challenge in *Idaho Conservation* was to the underlying programmatic Forest Plan development authorization that ensured that certain areas would not be recommended for wilderness classification. Smith, by comparison, challenges the agency's decision to proceed with a logging sale in a specific area, and he challenges the agency's alleged failure to comply with its site-specific NEPA disclosure obligations. As we noted in *Idaho Conservation,* even though initial land-management decisions are made at the Forest Plan stage, the agency must consider a no-action alternative at the site-specific planning stage. *Id.* at 1515 & n. 14, 1516 n. 16. Therefore, as the district court correctly observed in this case, logging sales are not a fait accompli at the Forest Plan stage. *Idaho Conservation* does not prohibit a plaintiff from challenging a specific sale or project, as opposed to a land-management decision or a nonwilderness classification, at the implementation stage.

## II. The Conn Merkel Area: Roaded or Unroaded for Purposes of Wilderness Consideration?

Under the WSWA, the Department of Agriculture is only required to consider the wilderness option for uninventoried roadless areas of more than 5,000 acres. WSWA § 5(b)(2), 98 Stat. at 303 (incorporating WSWA § 5(d)). It is undisputed that the Conn Merkel Area is larger than 5,000 acres and was not inventoried pursuant to RARE II. The disputed question in this case is whether the Conn Merkel Area is in fact roadless. If it is, it is eligible for wilderness consideration, and the failure of the Forest Service to address the area's wilderness potential in its NEPA documents is fatal to the proposed logging project. *See California v. Block,* 690 F.2d 753 (9th Cir.1982); *see also Greenpeace Action,* 14 F.3d at 1332 ("[a]n agency must prepare an EIS if 'substantial questions are raised as to whether a project *may* cause significant degradation of some human environmental factor.'") (quoting *LaFlamme v. FERC,* 852 F.2d 389, 397 (9th Cir.1988)).

Since RARE II, the agency has defined "roadless area" as an area "within which there are no improved roads maintained for travel by means of motorized vehicles intended for highway use." 1977 Roadless Area Inventory Criteria; *see National Audubon,* 4 F.3d at 834 n. 1. After an initial hearing in this case, the district court directed the Forest Service to determine whether the Conn Merkel Area satisfies this definition. The agency responded that the Thompson Ridge Road, a jeep trail that bisects the Conn Merkel Area into two parcels of less than 5,000 acres each, qualifies as a road under Forest Service criteria and prevents classification of the Conn Merkel Area as "roadless." On the basis of the agency's report, the district court entered summary judgment. Our review is limited to the question of whether the agency's classification of Thompson Ridge Road as a road was arbitrary and capricious. *See Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 377, 109 S.Ct. 1851, 1861, 104 L.Ed.2d 377 (1989); *National Audubon,* 4 F.3d at 834 n. 6.

Smith challenges the agency's interpretation of the phrase "intended for highway use" as irrational, apparently because of his opinion that a road must be navigable by ordinary passenger vehicles before it can disqualify an area from being classified as roadless.

The identification of "roads" in the National Forest System is a task legislatively delegated to the Department of Agriculture, and the agency is in far better position than

we are to make these fact-specific determinations. *Marsh,* 490 U.S. at 375–78, 109 S.Ct. at 1860; *see Central Arizona Water Conservation Dist. v. EPA,* 990 F.2d 1531, 1539, 1541 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 94, 126 L.Ed.2d 61 (1993). In response to the district court's directive, Forest Service agents drove the length of Thompson Ridge Road in two four-wheel drive vehicles that were suitable for travel on U.S. interstates. The agency also conducted an historical evaluation and determined that Thompson Ridge Road had been created by bulldozer equipment in the early 1960s, and, periodically, had been maintained by the Forest Service. The agency concluded that the road was maintained for vehicles intended for highway use. After a careful review of the record, which includes photographs of Thompson Ridge Road, we find that the agency's conclusion, that the Conn Merkel Area is not a roadless area of more than 5,000 acres under the appropriate criteria, is not arbitrary and capricious.[2] Accordingly, we are without jurisdiction to consider Smith's challenge to the agency's failure to consider the wilderness option in its NEPA documents. WSWA § 5(b)–(d), 98 Stat. at 303–04.

III. Failure to Consider the Effect of the Proposed Sale on Roadless Resources.

Smith contends that the NEPA documents prepared by the agency in connection with the Gatorson Sale are inadequate because they fail to address the impact of the sale on a roadless area of more than 6,000 acres to the west of Thompson Ridge Road. This parcel of land is comprised of 4,246 acres of uninventoried land in the Conn Merkel Area as well as about 2,000 acres of inventoried land in the Twin Sisters Area. Under WSWA § 5(b), this court may not review the adequacy of the agency's consideration of the wilderness option for this land because a portion of the land was inventoried pursuant to RARE II and the remainder is smaller than 5,000 acres. Smith's argument, however, is that the WSWA does not excuse the agency from considering the effect of a logging project on the roadless character of inventoried land, and does not prohibit this court from reviewing the agency's failure to do so.

The Forest Service acknowledges that the proposed sale will affect a 5,000 acre roadless area.[3] The appellees contend, however, that the WSWA relieves them of any obligation to consider the fact that a proposed project will affect a 5,000 acre roadless area that is partially inventoried and has been released for nonwilderness use. They reason that the sole significance of the fact that a parcel of land is roadless is that the parcel is potentially eligible for wilderness designation. Because Congress has, in the WSWA, preclud-

---

**2.** Smith contends that the agency's classification of Thompson Ridge Road as a road is arbitrary because the agency has classified as roadless other areas containing similar trails. Even assuming that these other roads are, as a factual matter, identical to Thompson Ridge Road, we find, after reviewing the record, that the alleged dissimilar treatment is as likely the result of misidentification or of different circumstances in these other regions as it is the result of a deliberate disregard by the agency of its own regulations in classifying Thompson Ridge Road. In the absence of any other evidence of a nefarious motive in connection with the allegedly inconsistent treatment, we presume that the agency has acted with regularity. *Louisiana Ass'n of Independent Producers & Royalty Owners v. FERC,* 958 F.2d 1101, 1118–19 (D.C.Cir.1992); *see Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); *cf. Conner v. Burford,* 848 F.2d 1441, 1448 (9th Cir.1988) (presuming that agency will comply with future NEPA obligations), *cert. de-*

*nied,* 489 U.S. 1012, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989).

**3.** The report submitted by the agency to Chief Judge Quackenbush establishes that the 4,246 acres of uninventoried land to the west of Thompson Ridge Road is roadless. 9/16/93 Report of the Forest Supervisor (CR 58) at 7 ("The Thompson Ridge road ... bisects the Gatorson-Thompson Ridge into two parcels of *unroaded* area, each of which is less than 5,000 acres.... [T]he ... acreage west of the Thompson Ridge road equals 4,246 acres....") (emphasis added); *see also id.* at 10 ("When the area described by the court using the plaintiff's 'Conn Merkel' boundary is redrawn to exclude areas containing ... non-conforming uses, the remaining acreage of *unroaded* area west and south of the improved road along Thompson Ridge equals 4,246 acres.") (emphasis added). Counsel for the agency conceded, at oral argument, that thousands of acres of the inventoried land bordering the Conn Merkel Area to the west is unroaded.

ed judicial review of the suitability of inventoried lands for inclusion into the wilderness system, the appellees argue, the fact that a parcel of released land is roadless is, in itself, immaterial and need not be addressed in NEPA documents.

We rejected similar arguments in *National Audubon,* which we decided while this case was pending in the district court. In that case, we considered a challenge to the Forest Service's decision not to prepare an EIS in connection with a proposed logging project on inventoried, roadless land in the Oregon National Forest System. The Forest Service argued that § 7(b) of the Oregon Wilderness Act (OWA), Pub.L. No. 98–328, 98 Stat. 272 (1984), which contains language identical to that in § 5(b) of the WSWA, precluded judicial review of the agency's decision not to consider the effect of the proposed sale on roadless parcels of inventoried land. We held that "[t]he prohibition on judicial review found in § 7(b) of the OWA applies not to *roadless or roaded* determinations, but to the Act's *wilderness or non-wilderness* designations." *National Audubon,* 4 F.3d at 837 (emphasis in original).

The distinction we drew in *National Audubon* between wilderness designations and roadless determinations would be meaningless if, as the appellees suggest, an area's roadless character has no environmental significance. As we stated in that case, "the decision to harvest timber on a previously undeveloped tract of land is 'an irreversible and irretrievable decision' which could have 'serious environmental consequences.'" *Id.* at 842 (quoting the lower court opinion). That the land has been released by Congress for nonwilderness use does not excuse the agency from complying with its NEPA obligations when implementing a land-use program.

There is, moreover, an additional significance, beyond the effect on "roadlessness," to the agency's decision to approve a logging sale on a 5,000 acre roadless area. Judicial review of the wilderness option is not foreclosed forever by the WSWA. Under that Act, the wilderness option for inventoried lands may be revisited in second-generation Forest Plans. WSWA § 5(b)(2), 98 Stat. at

303; *National Audubon,* 4 F.3d at 837. Accordingly, when the agency is considering the development of a 5,000 acre roadless area, selection of a no-action alternative, which the agency is required to consider, *Idaho Conservation,* 956 F.2d at 1515 (citing *City of Tenakee Springs v. Block,* 778 F.2d 1402, 1406 (9th Cir.1985)), would preserve the possibility that the area might some day be designated as wilderness. Clearly, under the WSWA, the agency is not required to preserve any released roadless area for wilderness consideration in second-generation Forest Plans. WSWA § 5(b)(3), 98 Stat. at 303. But the possibility of future wilderness classification triggers, at the very least, an obligation on the part of the agency to disclose the fact that development will affect a 5,000 acre roadless area.

The Forest Service argues that even if the fact that an area is roadless is environmentally significant, the documents it prepared in this case—the Colville Forest Plan EIS and the Gatorson EA—are adequate under NEPA. "Roadless character," the Forest Service asserts, is merely a synonym for specific environmental resources, including soil quality, water quality, vegetation, wildlife and fishery resources, recreational value, and scenic quality. All of these resources were addressed explicitly in the Gatorson EA, and the Forest Supervisor's finding that the Gatorson Sale will have no significant impact on these resources has not, itself, been challenged by Smith. In addition, the Gatorson EA specifically discussed the effect of the sale on "unroaded solitude."

Nevertheless, we must conclude that the agency's NEPA documents are inadequate. The Gatorson EA addresses only the impact of the sale on resources in the Gatorson Planning Area, the area containing the proposed logging units. This area extends only as far east as the eastern-most proposed logging sites, and, significantly, does not include the remaining thousands of acres of roadless land in the Conn Merkel Area to the west of Thompson Ridge Road that will no longer be part of a 5,000 acre roadless ex-

panse. The effect of the Gatorson Sale on this land was not addressed in the EA.[4]

The agency has never, in its NEPA documents, taken into account the fact that the sale will affect a 5,000 acre roadless area. In both the Colville Forest EIS and the Gatorson EA, the agency recognized that a portion of the Twin Sisters RARE II Area contains no roads, but dismissed the fact as irrelevant for wilderness consideration purposes because that portion would not stand alone as a 5,000 acre roadless area. Similarly, in both documents, the agency concluded that the Conn Merkel Area cannot stand alone as a 5,000 acre roadless area because of Thompson Ridge Road. But nowhere has the agency disclosed that the inventoried and uninventoried lands together comprise one 5,000 acre roadless area. As discussed above, the decision to harvest timber in a 5,000 acre roadless area is environmentally significant. We held in *National Audubon* that the agency must, under NEPA, consider the effect of a logging project on such a resource. We now therefore must hold that the agency's obligation to take a "hard look" at the environmental consequences of the proposed sale and consider a no-action alternative require it, at the very least, to acknowledge the existence of the 5,000 acre roadless area. *See Greenpeace Action*, 14 F.3d at 1332; 40 C.F.R. §§ 1502.14, 1502.16 (1993).

The parties have expended considerable effort arguing about whether the agency must prepare a site-specific EIS. In *National Audubon*, we remanded for consideration of whether the agency's decision not to prepare an EIS in connection with a timber sale on inventoried land was arbitrary and capricious. *National Audubon*, 4 F.3d at 837–41. Implicit in that remand was our conclusion that an EIS may not be *per se* required under such circumstances. We leave to the agency the decision of how best to comply with NEPA and its implementing regulations, and hold only that the NEPA documents before us are insufficient.

*Conclusion*

For the foregoing reasons, the judgment of the district court is AFFIRMED in part and REVERSED in part, and this case is REMANDED to the district court.

---

4. The Forest Service has provided us with a string of citations to portions of the EA allegedly addressing the effect of the sale on the entire Conn Merkel Area. FS Brf. at 16. All but one of these citations refer only to portions of the EA discussing the effect of the sale on water quality and hydrology in the general region. The other citation refers to a portion of the EA indicating only that the sale will lead to a "long-term reduction of average tree size and more created openings in the planning area and beyond. . . ."