**KETTLE RANGE CONSERVATION GROUP and Inland Empire Public Lands Council, Plaintiffs,**

v.

**UNITED STATES FOREST SERVICE, Defendant.**

**No. 97–207–PA.**

United States District Court, D. Oregon.

June 17, 1997.

Gary K. Kahn, Peggy Hennessy, Reeves, Kahn & Eder, Portland, OR, for Plaintiffs.

Kristine Olson, U.S. Atty., District of Oregon, Thomas C. Lee, Asst. U.S. Atty., Portland, OR, Val J. McLam Black, Special Asst., U.S. Atty., Portland, OR, for Defendant.

**OPINION**

PANNER, District Judge.

Plaintiffs Kettle Range Conservation Group and Inland Empire Public Lands Council bring this action against defendant United States Forest Service alleging violations of the National Environment Policy Act (NEPA), 42 U.S.C. §§ 4321–4347. Plaintiffs contend that defendant violated NEPA by failing to prepare an Environmental Impact Statement (EIS) regarding certain units of the proposed Eagle Rock timber sale in Washington's Colville National Forest.

The parties agreed to combine a hearing on plaintiffs' motion for preliminary injunction with a trial on the merits. Fed.R.Civ.P. 65(a)(2). I conducted a court trial on June 10 and 13, 1997. These are my findings of fact and conclusions of law. Fed.R.Civ.P. 52(a). I find for defendant.

## FINDINGS OF FACT

Plaintiffs are two nonprofit organizations with close to 1,000 members, some of whom use the land constituting the proposed sale for primitive recreation, hiking, hunting, solitude, camping, skiing, and photography of undisturbed areas. With the exception of units 40 and 43A, plaintiffs challenge units 38–45 of the proposed timber sale.[1] Plaintiffs contend that the challenged units constitute an uninventoried roadless area adjacent to the inventoried Thirteenmile Roadless Area, and that defendant's failure to prepare an EIS analyzing the environmental effects of the proposed sale on the uninventoried roadless area violates NEPA.

The Eagle Rock Ecosystem Restoration Project (ERER Project), undertaken pursuant to the 1988 Colville National Forest Plan (Forest Plan), includes the proposal to harvest timber in the challenged units. In April 1996, defendant made the ERER Project Environmental Assessment (EA) available for public comment. In the EA, defendant recommends implementing "Timber Harvest Alternative B" based upon the EA's environmental analysis and Finding of No Signifi-

---

**1.** Plaintiffs have never challenged unit 43A and defendant's trial materials demonstrate that unit 40 has been withdrawn from the proposed sale.

Reference to units 38–45 excludes units 40 and 43A.

cant Impact (FONSI). A Decision Notice and FONSI was signed June 6, 1996. On September 16, 1996, the Regional Forester affirmed the Decision following plaintiffs' administrative appeal. The contract for the proposed sale was awarded and work has already begun on the unchallenged units. Defendant voluntarily stayed operations on the challenged units until the issuance of this Opinion.

The critical factual issue in this case is whether the challenged units are roadless. It is undisputed that defendant considers the challenged units as roaded, and thus, the studies and research that formed the basis for the EA and the FONSI analyzed the effect of the proposed sale on the challenged units only as roaded, not roadless, areas.

It is further undisputed that the challenged units together comprise approximately 260 acres and lie in an area of approximately 500 acres. Additionally, the parties agree that the challenged units are adjacent to the inventoried Thirteenmile Roadless Area, which is approximately 12,700 acres. The Thirteenmile Roadless Area borders the challenged units area to the east and south. The unit area is bordered on the west by the 990 road and to the north by the 2053 road, both of which are closed roads.

The parties also agree that the challenged units were logged sometime between 1944 and 1955. The degree to which evidence of that logging presently exists, including evidence of roads and stumps, is contested.

The administrative record shows that as part of its RARE II inventory[2], defendant examined at least a portion of units 38–45 for consideration as roadless area additions to the Thirteenmile Roadless Area as early as 1977. Administrative Record (AR) 189, 200, 202, 203, 218–257. Defendant rejected addition of these areas to the Thirteenmile Roadless Area because of past evidence of logging and roads. AR 202, 221, 251.

In 1987–88, as part of the drafting of the Forest Plan, defendant again considered the area of units 38–45 for possible addition to the Thirteenmile Roadless Area. As explained in Appendix C to the Forest Plan's EIS, defendant concluded that the Thirteenmile Roadless Area could not be expanded beyond its present boundary and maintain its roadless integrity. AR 1058 at 89. Defendant also noted that the "natural integrity of the area is diminished by views of adjacent timber harvest and roads." *Id.*

As part of the proposed Eagle Rock timber sale, defendant requested public input on the environmental effects of the sale. AR 1173–1181. Defendant noted that "[r]oadless identification" was one of the tentative issues needing consideration. AR 1179. In response, plaintiff Kettle Range Conservation Group requested no logging in the roadless area, including unroaded areas which are "not dedicated to roadless management by the [Forest Plan]." AR 1183.

In preparation for the EA, James Parker, a certified silviculturist who works for defendant, walked through the proposed sale area in October 1995 and gathered information on the existence of roads, the presence of stumps, the types of trees, the presence of disease, and other related data. AR 2191–95. His field notes show, *inter alia*, the presence of some old roads in the sale area as well as scattered stumps in several of the units. *See, e.g.*, AR 2192, 2193.

Parker also prepared silviculture reports for each unit of the sale. AR 3031–3054. These reports note the presence of existing skid trails and at least one brushed in road, as well as past "light sanitation/salvage" logging, and past "fairly heavy" sanitation/salvage type logging. *Id.*

As noted above, the EA, issued in April 1996, recommended "Timber Harvest Alternative B" as the preferred course of action. This alternative proposes different types of logging for different units. Much of the logging in the challenged units is for sanitation and salvage purposes to rid the area of dead, dying, diseased, or insect infested

---

**2.** Between 1972 and 1979, defendant conducted two inventories known as Roadless Area Review and Evaluation I and II (RARE I and RARE II). For a more complete explanation of the RARE process and its interplay with federal and state wilderness acts, see *National Audubon Soc'y v. United States Forest Serv.*, 46 F.3d 1437, 1439–1440 (9th Cir.1993) and *Smith v. United States Forest Serv.*, 33 F.3d 1072, 1073–74 (9th Cir. 1994).

trees. AR 3069 at Summary 5, 6; AR 3071 at 11–13. Some units are to be logged to return the area to park-like stand conditions or for commercial thinning purposes. *Id.*

In May 1996, Kettle Range Conservation Group sent its comments on the EA to defendant. It specifically noted that it challenged defendant's characterization of units 38–45 as roaded. AR 3150. Defendant responded that the area is roaded because it was logged in the 1950's and old roads and stumps from past harvesting activity are present throughout. AR 3243–Appx. J–3.

As noted above, in June 1996, defendant issued its Decision Notice and FONSI, formally adopting "Timber Harvest Alternative B". AR 3072.

On August 3, 1996, plaintiffs filed an administrative appeal of the Decision Notice and FONSI. Later that month, Parker took several photographs of the challenged units showing old roads and stumps scattered throughout the area. AR 3498–3510. Defendant denied plaintiffs' administrative appeal in September 1996. This action followed.

As part of this litigation, plaintiffs presented evidence outside the administrative record in an effort to show that the challenged units meet defendant's definition of roadless ·because the roads, as they presently exist, are nothing more than barely recognizable tracks, and the stumps are few, widely scattered, and mostly decomposed. I observed a video of the area prepared by plaintiffs and reviewed the declarations of Evan Frost, Timothy Coleman, Anthony Van Gessel, and Michael Petersen which attest to the overall undeveloped appearance of the challenged units despite the presence of old skid trails and scattered stumps.

In addition, defendants offered Parker's testimony which confirmed the observations made in his field notes and which interpreted some of the photographs taken during the administrative appeal. Defendants also offered the testimony of Chuck Walt, a transportation planner for defendant, who oversaw the transportation plan for the proposed sale. His testimony primarily addressed the conditions of the area's existing roads.

## STANDARD OF REVIEW

■ In analyzing plaintiffs' NEPA challenge, I must determine whether defendant's actions were "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Greenpeace Action v. Franklin,* 14 F.3d 1324, 1330–31 (9th Cir.1992) (arbitrary and capricious standard used to review an agency's NEPA compliance with respect to its factually-based decision not to prepare an EIS or to supplement an EIS). Although review under the arbitrary and capricious standard is narrow, the agency must articulate a rational connection between the facts found and the conclusions made. *United States v. Louisiana–Pacific Corp.,* 967 F.2d 1372, 1376 (9th Cir.1992).

■ As explained in *Greenpeace Action,*

[The arbitrary and capricious] standard requires [the court] to ensure that an agency has taken the requisite hard look at the environmental consequences of its proposed action, carefully reviewing the record to ascertain whether the agency decision is founded on a reasoned evaluation of the relevant factors. This inquiry into the facts is to be searching and careful.

*Greenpeace Action,* 14 F.3d at 1332 (internal quotations and citations omitted).

## CONCLUSIONS OF LAW

I. Preliminary Issues

A. standing

Defendant argues that plaintiffs lack standing to challenge the proposed sale. To have standing, plaintiffs must demonstrate (1) that they have suffered an injury in fact; (2) that there is a causal connection between the injury and the conduct complained of; and (3) that it is likely that the injury will be redressed by a favorable decision. *Individuals for Responsible Gov't v. Washoe County,* 110 F.3d 699, 702 (9th Cir.1997) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992)). Additionally, in *Lujan,* the Supreme Court noted that environmental organizations have standing when their members'

interests would be adversely affected by the action they challenge. *Lujan,* 504 U.S. at 573 n. 8, 112 S.Ct. at 2143 n. 8 (citing *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989); *Japan Whaling Ass'n v. American Cetacean Soc'y,* 478 U.S. 221, 231, 106 S.Ct. 2860, 2867, 92 L.Ed.2d 166 (1986)).

■ Plaintiffs have submitted declarations from members reciting their current and anticipated future uses of the challenged units and noting that the proposed logging and roading of the area will interfere with their uses and enjoyment of the area. These declarations sufficiently show that plaintiffs have standing to proceed with this action.

### B. Delay

Defendant argues that plaintiffs are precluded from bringing this action and from seeking injunctive relief because plaintiffs waited five months after receiving the September 1996 decision on the administrative appeal before filing suit. The only case cited by defendant is one in which the plaintiffs had delayed five years before taking any action which might have avoided the threat of immediate closure of a "sexually oriented business." *Lydo Enterprises, Inc. v. City of Las Vegas,* 745 F.2d 1211, 1213 (9th Cir. 1984).

■ Obviously, a delay of a few months is categorically distinct from a five-year delay. I reject defendant's argument that the five-month delay by plaintiffs was unreasonable and bars their right to bring suit.

### C. Waiver

■ Defendant maintains that plaintiffs have waived their right to make a site-specific challenge to these units because they did not challenge defendant's decision to reject a roadless classification for the challenged units in the Forest Plan. Defendant's argument is without merit.

The Ninth Circuit addressed this argument in *Smith.* There, the plaintiff challenged the defendant's determination that a certain area affected by a proposed timber sale was not roadless. The defendant argued that plaintiff had waived his right to raise a site-specific challenge because the plaintiff had failed to challenge the roaded designation of the area in the Forest Plan itself. In agreeing with the plaintiff, the Ninth Circuit held that the plaintiff's "failure to challenge factual determinations made in the Forest Plan EIS does not prevent him from challenging the sufficiency of the agency's NEPA disclosure at the implementation stage." *Smith,* 33 F.3d at 1075. The court concluded that the plaintiff was not prohibited from "challenging a specific sale or project, as opposed to a land-management decision or a nonwilderness classification, at the implementation stage." *Id.* at 1076. *Smith* forecloses defendant's waiver argument.

## II. Merits

### A. Review of Material Outside of Agency Record

#### 1. Standards

■ In general, "judicial review of agency action is limited to review of the administrative record." *Animal Defense Council v. Hodel,* 840 F.2d 1432, 1436 (9th Cir.1988), *amended* 867 F.2d 1244 (9th Cir.1989). However, in NEPA cases, the court may extend its review beyond the administrative record and permit the introduction of new evidence where the plaintiff alleges "that an EIS has neglected to mention a serious environmental consequence, failed adequately to discuss some reasonable alternative, or otherwise swept 'stubborn problems or serious criticism ... under the rug.'" *Id.* at 1437 (quoting *County of Suffolk v. Secretary of the Interior,* 562 F.2d 1368, 1384–85 (2d Cir. 1977)).

In *National Audubon Society,* the Ninth Circuit held that where the plaintiff alleged that the defendant completely ignored the roadless nature of a timber sale area when preparing an EA, the plaintiff in effect alleged that the defendant "neglected to mention a serious environmental consequence" in preparing the EA and thus, the district court properly admitted the declaration of an expert which was not in the administrative record. *National Audubon Soc'y,* 46 F.3d at 1448; *see also Headwaters, Inc. v. BLM Medford Dist.,* 665 F.Supp. 873, 876 (D.Or.

1987) (appropriate for court to "look beyond the record insofar as it is intended to show that [the agency's] research or analysis was inadequate.").

### 2. Discussion

As discussed further below, I conclude that defendant's decision to characterize the area of the challenged units as roaded, is not arbitrary and capricious. As also discussed further below, there is sufficient evidence in the administrative record to support defendant's decision and to show that it is "founded on a reasoned evaluation of the relevant factors." Thus, I need not extend my review outside of the administrative record. However, even admitting and considering all of the extra-record evidence, I still conclude that defendant's decision was not arbitrary and capricious. Therefore, the question of whether to admit and rely on the extra-record evidence is immaterial because such evidence does not affect the outcome of the case.

### B. Defendant's Decision

Plaintiff relies on a definition of "roadless area" promulgated by defendant during the 1980's as part of a national forest planning process. It defines "roadless area" as an "area of undeveloped Federal land within which there are no improved roads maintained for travel by means of motorized vehicles intended for highway use." Exh. 6 to Frost Dec. The Ninth Circuit notes that defendant has used this "roadless area" definition since RARE II. *Smith*, 33 F.3d at 1076. During argument, defendant suggested that a more restrictive definition found in the Forest Plan was more appropriate. In light of my decision that defendant's decision to characterize the area as roaded is not arbitrary and capricious even under the definition put forth by plaintiffs, I need not consider the one urged by defendant.

Plaintiffs argue that the challenged units are roadless because they contain no roads "maintained for travel by means of motorized vehicles intended for highway use." There is no dispute that the fewer than half-dozen roads in the challenged units have not been used since the units were last logged, sometime in the late 1940's or early 1950's, and

have not been maintained since that time. There is also no dispute that the roads are incapable of being traveled by motorized vehicles intended for highway use.

Where plaintiffs' challenge fails, however, is in that aspect of the roadless area definition that requires that the area be "undeveloped." This distinguishes this case from *National Audubon Society* where there was no dispute that the challenged areas there met the definition for roadless. It also distinguishes this case from *Smith* where, as to one issue, the only question was whether the existing jeep trail could be traveled by a motorized vehicle intended for highway use, and as to the other issue, there was no dispute that the area was roadless. In contrast to the instant case, there was no prior logging of the challenged areas in *Smith*.

Here, the issue is whether the area is undeveloped given that it was previously logged. The fact that the area was logged forty to fifty years ago is not an automatic ban to it being considered roadless. Defendant itself recognizes that some previously logged areas can be considered roadless if the "logging is not evident ... [and] where stumps, skid trails, and roads are substantially unrecognizable...." Exh. 6 to Frost Dec.

As noted above, defendant has, on three separate occasions, found recognizable evidence of past logging in the challenged units. First, as part of the RARE II inventory process; second, as part of the development of the Forest Plan; and third, in preparing the EA for this timber sale. The administrative record shows that defendant has consistently noted the presence of stumps and roads in the area, rendering it unsuitable for a roadless designation.

██ I recognize that it is the present "on-the-ground" situation which determines whether an area is roadless or roaded for purposes of assessing compliance with NEPA. *National Audubon Soc'y v. United States Forest Serv.*, No. CV–90–811–MA, Amended Opinion at 8, 1990 WL 310513 (D.Or. Nov. 21, 1990), *aff'd on this issue and rev'd on other grounds, National Audubon Soc'y*, 46 F.3d at 1442–43. Thus, I wish to make clear that I do not consider defendant's

earlier characterizations of the area as "roaded" as conclusive on the issue of whether the area was roaded or roadless at the time defendant made the decision challenged in this action. I note the history of defendant's characterizations to show that the challenged area has exhibited signs of development in the form of roads and stumps since at least 1977.

 The relevant question is what defendant reviewed and examined in making the decision at issue. Defendant obviously reviewed its prior conclusions. In addition, it sent Parker to the field to note the current conditions. Parker's field notes, the most relevant evidence of current characteristics in the administrative record, show that defendant examined the area for indicia of development in general and past logging in particular. Those notes, recording the presence of old roads and skid trails as well as stumps throughout the area, demonstrate that the evidence of prior logging is not "substantially unrecognizable" and thus, the challenged area cannot be considered undeveloped. If it is not undeveloped, it does not meet the roadless definition. Parker's photographs, although taken after the Decision Notice and FONSI were issued, are also part of the administrative record and provide further evidence of defendant's efforts to record the area's present condition. Thus, there is ample evidence in the administrative record to show that defendant looked at the relevant factor of the "on-the-ground" evidence of prior logging, particularly, any evidence of the continued existence of roads and stumps in the challenged units. Defendant's decision to characterize the area as roaded is founded on a reasoned evaluation of this relevant factor.

Even considering the extra-record evidence, I cannot conclude that defendant's decision is arbitrary and capricious. Based on the video and the declarations, I agree with plaintiffs that, overall, the area retains a somewhat natural appearance. However, plaintiffs' own witnesses concede, and this is confirmed by the pictures as seen on the video, that signs of roads or skid trails, and stumps, are still visible. This is inconsistent with a finding that evidence of prior logging is substantially unrecognizable. The fact that the roads are impassable by motorized vehicles intended by highway use is immaterial when the challenged units still retain recognizable signs of prior challenged units still retain recognizable signs of prior logging.

## CONCLUSION

For the reasons stated above, I find for defendant.